----------o----------

## Dufour, Executor, &c., *v.* Dufour and Others.

Decedents' Estates.—Settlement.—By the term "final settlement," as used in section 116 of the act for the settlement of decedents' estates, is not meant merely an ascertainment of the final balance of cash in the hands of an executor or administrator; it comprehends, also, a payment of that balance so as to leave nothing to be done to complete the execution of his trust.

Same.—Payment into Court.—An executor or administrator has no authority to pay a balance in his hands into the court, except in pursuance of an order of the court.

Same.—Interest on Money.—An executor or administrator cannot be charged with interest on moneys collected by him, merely because he has not reported them or paid them into the court, where there has been no order of the court requiring him to do so.

Same.—Mere delay in closing the administration of an estate, when it does not appear to have been needless, though accompanied by demands of the executor for credits which the court properly disallows, will not justify the court in charging him with interest on balances in his hands.

SAME.—LEGATEES.—When an executor has improperly kept the legatees out of the use of their money, he is liable for interest thereon, and mere delay in settling the estate is sometimes *prima facie* evidence of his having done so.

SAME.—But where an estate is large, consisting (as in the present case) of real estate, directed to be subdivided into town lots and sold, and the proceeds collected, and of choses in action to be collected in several counties, and where (as in the present case) the executor has, years before the final settlement of the estate, paid out to the legatees very nearly the whole of their shares, such delay is not shown.

APPEAL from the *Switzerland* Circuit Court.

FRAZER, C. J.—This is an appeal by an executor from the order of the court below, made on final settlement of the estate of the testator. In *July,* 1862, before this order was entered, the appellant had made what purported to be a final report of his proceedings as executor, upon the basis of, and according to which he proposed to make final settlement. Some of the appellees, who were interested as legatees, appeared and made specific objections in writing, and thereupon the court charged the executor, in addition to the amount with which he had charged himself, the sum of $500 for interest, and allowed him $275 for services, in addition to the credit which he had claimed therefor. It further found the balance in his hands, and ordered final settlement of the estate, and that the amount so declared in his hands should be paid out, according to the directions of the will, to the legatees. The money found in his hands was not paid into court, nor to the legatees, as ordered. One year later, there having been no order discharging the executor, the same legatees who had made objections to the final report, again appeared, and, by leave of court, filed further objections in writing. The executor thereupon appeared, and the matter was continued until the next term, when he demurred to the exceptions. Some other novel proceedings, not necessary to notice, were had, when the executor applied to correct his final report in certain particulars which were set forth in a written application, together with the facts relating thereto. After this, the appel-

Dufour, Executor, &c., *v.* Dufour and Others.

lee *Malin* came, claiming to be the assignee of a legatee who had not appeared, and asked leave to join in the pending controversy, which was allowed by the court; and thereupon he also filed written exceptions to the final report of the executor. The executor objected to re-opening the matter, but he was overruled. He afterwards filed an amendment to his final report. Then followed divers written pleadings, not necessary to notice, and finally, in 1866, the court adjudged the matter, charging the executor with interest upon balances unaccounted for by each current report, from the date thereof until the succeeding report, and crediting him with interest on sums by those reports shown to have been paid out, from the date of the report showing such payments until the next current report, thus making the balance at each report the basis upon which interest was computed until the next. As there were seven reports, a corresponding number of rests were made in the computation, thus compounding the interest, which was computed until the date of the order now before us on appeal. As those several reports did not disclose any payments to legatees, though large payments of that kind had been made, of course interest was calculated and compounded upon a much greater sum than was actually in the hands of the appellant. The credit allowed for such payments was ascertained, not by computing interest with the same rests as against the executor, as should have been done, but with only one rest—at the date of the final report. The executor was himself a legatee, and the proceeds of the estate were to be equally divided between himself and his three brothers, but the shares of two of the brothers were to be held by the appellant in trust for their use and benefit.

It is contended that the action of the court in *July*, 1862, upon the report then presented, was a final settlement, and not having been appealed from, could only be opened for re-examination on account of fraud or mistake, and that as this was not alleged, the subsequent action of the court was erroneous. This is undoubtedly so, after the proceed-

ings of the court in the settlement of an estate have come to a final termination. 2 G. & H., § 116, p. 518. Whether the final settlement contemplated by the statute cited, refers only to cases where the executor has been discharged, as having fully performed his trust, must now be decided.

This was not a suit to set aside a final settlement. The proceedings were conducted upon the idea that the estate was still open. The appellant had not performed the order of 1862, by paying the money as directed. By the words "final settlement," as used in section 116 of the act, which it is there declared shall not be re-opened except by appeal, or for fraud or mistake, we do not understand the mere ascertainment of the final balance of cash in the hands of an executor or administrator. We think that a payment of that balance is also included, so that nothing shall remain to be done by him in his fiduciary capacity, and he may be fully discharged from his trusts, as having completely performed them. The words admit of this signification, and it is obvious that by adopting it, some mischiefs otherwise imminent will often be avoided, and that a better protection will be afforded to distributees, legatees and creditors, many of whom are apt, by reason of infancy, to be unable to protect themselves. They are not required to be notified of the time at which such matters will be attended to. Accounts are often voluminous and complicated, so that there is great danger, at best, that the courts, with all the facts before them, may commit errors for which there will be no remedy. A mere error of law, not apparent on the record, though it might sacrifice much, would perhaps be beyond the reach of any relief within the power of the courts to give. *Camper* v. *Hayeth*, 10 Ind. 528. So long as the proceedings are *in fieri*, it ought to be in the power of the court, either upon its own motion, or at the suggestion of those interested, to correct what has been done amiss, that the mischiefs which we have suggested, and all others so liable to occur in *ex parte* proceedings, may as far as possible be finally avoided. In construing this

statute as we do, to avoid unjust consequences, where its language would as well admit of the interpretation for which the appellant contends, we are well supported by authority. Domat 10; *The United States* v. *Fisher*, 2 Cranch 358; Carth. 134.

Our statute concerning the settlement of decedents' estates contained requirements, now repealed, which it is believed might be usefully adopted by the courts in practice. They were, that the executor or administrator should, at the next term after the collection of any money of an estate, report the fact, stating from whom it was received, and the nature of the demand therefor, and that he should also show by his own affidavit that no money not so reported had been collected; that where the amount of cash thus shown to be in his hands should exceed $50, the court should order that it be paid into court, so that if deemed best the court might order it to be loaned for a short period; and that if such report was not voluntarily made, the court should forthwith require it, and if not then done, should at once remove the executor or administrator. 2 G. & H., §§ 105, 106, 107, p. 515. These were very important provisions, and if complied with, there would be little opportunity to delay creditors and keep the estate open for the purpose of speculation upon its substance.

It will be observed, however, that there is no authority of law to pay the money into court, in the absence of an order to that effect, and should it be done, it is probable that the executor or administrator would still be responsible for it. As there was no such order of court in this case, the mere fact that it was not so paid into court was not a failure of duty, and afforded no ground for charging the appellant with interest. Nor do we think that the simple failure to report collections, in the absence of any rule or order of the court requiring it, was such disregard of duty as would make him liable for interest. We know of no case, and we have examined many, which would justify the enforcement of so rigid a rule. The liability for interest in

this case depends mainly upon the evidence which was produced to the court below upon the subject, aside from the facts which appeared of record, and of which the court could judicially take notice in this controversy. That evidence is in the record, and though very voluminous, we have taken the pains to examine it with some care.

The estate was large. Real estate was required by the will to be laid out in town lots and sold, and the proceeds collected. About ten years elapsed from the date of the letters testamentary until the executor proposed to make final settlement. During that period he had made and filed six accounts current, the last in *April*, 1859. No evidence was produced tending to show that collections could have been more rapidly made, nor that there was any considerable delay in presenting the matter of the estate for final settlement after it was ready therefor. Nor was there the slightest evidence that the executor had made any profit out of the funds of the estate, or that he had used them or mingled them with his own, but exactly the contrary appeared. There was merely the delay in closing the estate, which did not appear to have been needless, together with some claims for credits which the court was warranted by the evidence in rejecting. This did not authorize the computation of interest against the appellant. The principle deducible from the cases is, that one exercising such a trust is liable for interest when he has improperly kept the beneficiaries out of the use of their money. Mere delay in finally settling the estate is sometimes *prima facie* evidence of this. But when an estate is large, as in this case, consisting of real estate to be subdivided into town lots and sold, and the proceeds collected, and choses in action to be collected in a number of counties, and where the executor has, years before final settlement, as in this case, paid out to the beneficiaries very nearly the whole of what was their shares, the presumption arising from mere delay in closing the estate is not warranted by authority or sound reason. The cases

are collected in a valuable note to 2 Williams on Ex. 1670, 5th Am. Ed.

Among the credits claimed by the executor and disallowed by the court, there are two only in reference to which any question of law is involved. The court refused to allow a credit of $160 paid for a monument for the testator. We need not now determine whether that item, if properly expended for such a purpose, should have been allowed. There was evidence tending strongly to show that the monument was almost worthless and utterly unsuitable, and on this account we could not interfere with the action of the court below upon the subject. We do not concede that the fact that the other sons of the testator, who were legatees, did not authorize the purchase of the monument, could control the decision of the question by the court.

The executor paid off a liability of one of the legatees upon which the executor was personally liable. He claimed to be credited with the amount so paid, as so much upon the legacy, and the court disallowed the credit. We think that this was correct.

The order appealed from is reversed, with costs, and the matter remanded, with directions to proceed according to this opinion.

*C. E. Walker*, for appellant.

*R. N. Lamb*, *S. Carter* and *A. C. Downey*, for appellees.