No. 8311.

## Evans et al. *v.* Hardy, Adm'r.

DECEDENTS' ESTATES. — *Rents Accruing After Death of Intestate.* — Rents which accrue from the real estate of an intestate, after his death, go to his heirs, and not to his administrator.

SAME.—*Emblements and Annual Crops.*—The words "emblements and annual crops," as used in the act concerning decedents' estates, do not include uncut grass growing in the field. It descends with the land to the heir.

SAME.—*Trustee.—Heirs.—Conversion.*—The reception by an administrator, except when otherwise specially provided, of the rents, issues and profits of the real estate of an intestate, accruing after his death, makes the administrator the trustee of the heirs and not of the creditors of the estate, but the application of such rents, etc., to the payment of his decedent's debts does not create any claim against the estate in favor of the heirs, but is a conversion of the money in his hands, belonging to the heirs, for which he is personally liable.

From the Spencer Circuit Court.

*C. L. Wedding*, for appellants.

*G. L. Reinhard, T. F. DeBruler* and *W. H. Thomas*, for appellee.

NIBLACK, J.—This was a proceeding, based upon a claim filed against the estate of Robert Graham, deceased, by Mollie Evans, James Graham and John W. Graham, children and only heirs at law of the decedent.

The complaint represented to the court that the said Robert Graham had died on the 5th day of July, 1874; that there descended from him to the plaintiffs six hundred acres of lands; that administration on the estate was thereafter granted to Joseph O. Graham; that the said Joseph O. Graham, as such administrator, had been permitted to receive the rents arising from said lands, as well as the proceeds of other lands descended to the plaintiffs from their mother, and sold by their guardian, and to appropriate such rents and proceeds to the payment of the debts against the estate, in the belief that said rents and proceeds would be sufficient to pay all of such debts, and to thus prevent the lands which had descended to them from their father, as above stated, from being sold to pay any portion of the same; that said estate had proved to be insolvent; that, by reason of the insolvency of the estate, the plaintiffs, acting through their guardian, had permitted the rents and proceeds referred to as above to be applied to the payment of debts against the estate, under a mistake of the facts constituting the true condition of the estate. Judgment was consequently demanded for a repayment of such rents and proceeds. During the progress of the cause, and before it was tried, Joseph O. Graham resigned his trust as administrator, and Thomas R. Hardy was appointed as his successor.

The court, at the request of the parties, made a special finding of the facts, which, summarily stated, was as follows: That Robert Graham died in Spencer county, where he resided, on the 5th day of July, 1874, leaving the plaintiffs, of the ages of eighteen, seventeen and fourteen years, respectively, as his only heirs at law, surviving him; that the decedent, at the time of his death, was the owner of four

hundred acres of land, situate in that county, and under cultivation, besides other lands in other places ; that Joseph O. Graham was appointed administrator of the decedent's estate, on the 23d day of July, 1874 ; that, at the time of the decedent's death, a crop of hay was growing on the four-hundred-acre tract of land, and ready to be cut ; that the decedent had, prior to his death, contracted with one Woollen to cut and bale this crop of hay for one-half thereof when baled ; that Woollen commenced cutting the hay on the 8th day of July, and completed his contract on the 11th day of November following ; that the said Joseph O. Graham, as such administrator, took possession of the decedent's half of the hay thus baled by Woollen, and sold the same for the sum of $1,107.80 ; that the said Joseph O. Graham continued to receive the rents accruing from the four-hundred-acre tract of the land for the years 1875, 1876, 1877 and 1878, and that Hardy, as his successor, received such rents for the year 1879, making an aggregate for all such years of the sum of $1,792.34 ; that of these rents the sum of $305 was paid over to the guardian of the plaintiffs ; that the plaintiffs were the owners of another tract of land, containing eighty acres, one-third of which had descended to them from their father, and the remaining two-thirds from their mother, and for the sale of which their guardian procured an order of sale from the proper court, upon his representation that, by selling the same and applying the proceeds to the payment of the decedent's debts, the sale of the four-hundred-acre tract for the payment of such debts would be prevented ; that their said guardian sold said eighty-acre tract of land for the sum of $600, of which sum $500 was paid over and applied in payment of the decedent's debts, $100 being paid over directly to one of the creditors at his request ; that all of said rents and proceeds of real estate, paid over as above stated, were in payment of preferred claims against the estate of the decedent ; that no

order of court was obtained authorizing the administrator to rent any of the lands of the decedent, but that, when the administrator received property in payment of rent, he obtained an order of court for its sale at private sale before selling it; that, on the 23d day of April, 1875, the said Joseph O. Graham, as administrator, filed his petition for the sale of certain lands belonging to the decedent, to pay debts against his estate, and by such petition represented to the court that he had rented the remaining real estate of the decedent for the year 1875, and that he believed the rents for that year would probably amount to as much as $1,000, asking an order that such rents should be applied to the payment of the decedent's debts; that the plaintiffs' guardian filed his consent that the lands described in the petition might be sold to pay such debts; that thereupon the court ordered said lands to be sold by the administrator, adding "that he apply rents to payment of debts of said Robert Graham;" that no other order was asked for or obtained concerning the rents of the lands belonging to the decedent's estate; that all of said rents came from the four-hundred-acre tract of land; that the said Joseph O. Graham supposed that by using the rents, received by him as above set forth, in the payment of the debts against the estate of the decedent, he could prevent the sale of the four-hundred-acre tract of land, but that in that supposition he was mistaken, as the estate has since proved to be insolvent.

From these facts the court came to the following conclusions of law:

*First.* That $400 of the proceeds of the sale of the eighty-acre tract of land sold by the plaintiffs' guardian was paid over to the administrator of the estate of Robert Graham, under a mistake of fact, and that the plaintiffs were entitled to recover from said estate two-thirds of that sum; that is to say, $266.66, with interest, making the aggregate sum of $310.65, to be paid as a preferred claim.

Evans *et al. v.* Hardy, Adm'r.

*Second.* That the plaintiffs were not entitled to recover anything from said estate for rents received by the administrators from the lands of which the said Robert Graham died seized.

The appellants, the claimants and plaintiffs below, complain only of the conclusion of law, at which the court arrived, holding that the estate was not liable for the rents received by the administrator, and applied by him to the payment of debts against it.

In support of their appeal, they argue, first, that under the law the rents which accrued on the four-hundred-acre tract, after the death of Robert Graham, went to them as his heirs, and not to his administrator. It may be regarded as the settled law of this State, as well as the generally accepted doctrine of the authorities, that the rents which accrue from the real estate of an intestate, after his death, go to his heirs, and not to his administrator. *King* v. *Anderson,* 20 Ind. 385 ; *Rubottom* v. *Morrow,* 24 Ind. 202 ; *Hankins* v. *Kimball,* 57 Ind. 42 ; *Boynton* v. *The P. & S. R. R. Co.,* 4 Cush. 467 ; *Haslage* v. *Krugh,* 25 Pa. St. 97 ; *Foteaux* v. *Lepage,* 6 Iowa, 123 ; *Smith* v. *Bland,* 7 B. Mon. 21 ; *Stinson* v. *Stinson,* 38 Me. 593.

The appellants argue, secondly, that the provision of the act concerning the settlement of decedents' estates, which requires the administrator to take possession of, and to inventory, the "emblements and annual crops, whether severed or not from the land, raised by labor," 2 R. S. 1876, p. 505, sec. 34, do not extend to and embrace uncut grass growing in the meadow, and that hence the grass growing upon the four-hundred-acre tract of land, at the time of their father's death, descended to them, and did not go to the administrator as personal property constituting assets of the estate. Webster defines an "emblement" to be "the produce or fruit of land sown or planted ; the growing crops of those vegetable productions of the soil, such as grain, garden

roots, and the like, which are not spontaneous, but require an outlay of cost and labor in one part of the year, the recompense for which is to arise in the shape of a crop in another part of the same year ;—used especially in the plural. The produce of grass, trees, and the like, is not signified by the term.'' This definition appears to have been carefully extracted from the text-writers, and is in substantial accord with that given by Bouvier in his Law Dictionary, and by other standard authors. Taylor Landlord & Tenant, sec. 534 ; 1 Hilliard Real Property, 18, sec. 16, 4th ed. ; 3 Washburn Real Property, 4th ed., marginal page 599 ; *Bank, etc., v. Crary*, 1 Barb. 542 ; *Green v. Armstrong*, 1 Den. 550 ; Toller on Executors, 193.

The distinction between annual crops, merely vegetable productions of the soil, raised by labor bestowed during the year, and trees, fruits and grass, which are, to a greater or less extent, of spontaneous growth, may be said to be well recognized and firmly established by the authorities. The words "emblements" and "annual crops," used in the act concerning decedents' estates, *supra*, do not, therefore, include uncut grass growing in the field, which descends with the land to the heir. This is the construction given to that act by Howland & Winter in their Manual for Executors and Administrators (see page 58, sec. 172), and we are unable to see that any other construction could be fairly given to it without palpably disregarding the well recognized and firmly established distinction referred to as above.

The appellants argue, thirdly, that the administrator, by taking possession of the growing crops upon, and by receiving the rents of, the real estate which descended to them from the intestate, became their trustee, and not the trustee of the creditors of the estate, and that, by reason of the application of these growing crops and rents to the payment of the preferred claims against the estate, they, the appellants, became not only creditors, but preferred creditors, of

the estate, for the value of the growing crops and rents thus applied. The reception by the administrator, except when otherwise specially provided, of the rents, issues and profits of the real estate of the intestate, accruing after his death, makes the administrator the trustee of the heirs, and not of the creditors, of the estate. *Robb's Appeal*, 41 Pa. St. 45 ; *Mills* v. *Merryman*, 49 Me. 65 ; *Lucy* v. *Lucy*, 55 N. H. 9 ; 2 Williams Executors, 6th ed., bottom p. 820, *n* ; *McCoy* v. *Scott*, 2 Rawle, 222 ; *Terry* v. *Ferguson*, 8 Porter, 500.

But the application by the administrator of such rents, issues and profits to the payment of the debts against his decedent's estate, does not create any claim against the estate in favor of the heirs. This results from the nature of the liability the administrator incurs to the heirs by receiving money belonging to them, and from the doctrine recognized in the cases of *Rodman* v. *Rodman*, 54 Ind. 444, and *Hankins* v. *Kimball*, 57 Ind. 42, heretofore cited. Such an application by the administrator of rents, issues and profits held by him for the heirs, is but an improper commingling of the money and business of two estates at the same time in his hands, and a consequent conversion of the money in his hands belonging to the heirs, for which he becomes personally liable to them. The estate, as an entity, separate from the administrator, is but a fund, an inanimate thing, incapable of becoming a party to such a conversion, and hence can not be made liable for it to those whose money has been converted by the administrator.

We have not considered the question as to whether the intestate's contract with Woollen, for the cutting and baling of the crop of 1874, amounted to such a constructive severance of the grass from the land as made that crop assets in the hands of the administrator, as the facts concerning that contract are very meagrely stated in the special finding. But, assuming that contract to have been a binding one upon the estate, the one-half of the baled hay to which the dece-

dent would have become entitled, had he lived, properly became assets in the administrator's hands. Neither have we inquired what effect, if any, the order of court directing the administrator to apply certain rents in his hands to the payment of debts against ·the estate, may have had as a protection to the administrator as between him and the heirs ; as, however that might be decided, no liability on account of that order can result against the estate.

The judgment is affirmed, with costs.