Filed November 8, 1895.

---

No. 1,741.

## WINDSTANLEY ET AL. *v.* THE SECOND NATIONAL BANK OF LOUISVILLE, KENTUCKY.

INSOLVENCY.—*Preference in Assets in Hands of Assignee.—Money Collected and Not Paid Over.—Agency.—No Evidence as to What Was Done with Money Collected.—Bank.*—A claim to a preference in the assets in the hands of an assignee of an insolvent bank, on account of moneys collected by the bank for the claimant and not paid over to him, is not established in the absence of evidence as to what was done with them, although if they had been deposited in the bank and commingled with other moneys, or had gone into other property represented by the assets, the claimant would be entitled to a preference.

TRUST.—*Right of Beneficiary to Follow Trust Funds.—Conversion.— Insolvency.—Preference in Assets.*—The beneficiary of an express or constructive trust may follow the funds so long as they can be ascertained ; and when ascertainment fails he may follow the property into which the trust funds have been converted or invested, and in case of insolvency he may have a preference decreed.  But in all cases he must show that the trust property is actually represented in the assets.

From the Lawrence Circuit Court.

*N. Crooke* and *F. A. Crooke*, for appellants.

*W. H. Martin*, for appellee.

LOTZ, J.—The facts essential to the determination of this appeal appear in the special findings made by the court and are in substance as follows :

The plaintiff below, and appellee here, is a banking corporation organized under the laws of the United States, and does a general banking business in the city of Louisville, Kentucky. The appellants, the Windstanleys and Breyfogle, were a co-partnership, doing a general banking business at Bedford, Indiana, under the name of the "Bedford Bank." The Louisville bank sent to the Bedford bank for collection various claims aggregating $1,179.89. Prior to June the 2, 1893, the Bedford bank collected all of these claims, and on June second, third and fifth it remitted all of the collections so made, less the exchange, by three drafts drawn on the Chicago National Bank. At the time the Bedford bank drew the drafts in its favor on the Chicago bank, it had no funds whatever in the Chicago bank subject to draft. The drafts so drawn were not paid, nor has any part of the moneys collected ever been paid. On the 6th day of June, 1893, the Bedford bank made an assignment for the benefit of its creditors under the insolvent laws of this State, and Daniel W. Parker, one of the appellants, was appointed assignee. There was found to be due the Louisville bank of principal and interest the sum of $1,259.57. Upon these facts the court stated conclusions of law to the effect that the Louisville bank was entitled to recover the sum above named as against Parker, assignee, and that said claim was a preferred one against the funds in the assignee's hands. A judgment was rendered accordingly and the assignee ordered to pay the claim out of any funds in his hands as a preferred claim.

An assignment of error calls in question the trial court's conclusions of law.

The relation shown to exist between the Louisville bank and the Bedford bank is a fiduciary one, that of principal and agent. The question here presented for

decision is, we believe, a new one in this State, and the authorities elsewhere bearing upon it are not in harmony. Under these circumstances we feel it to be our duty to adopt that rule which leads to the most equitable and just results.

It is an ancient rule of the common law that the owner of a chattel who has been wrongfully deprived of its possession, may follow it and recover it, no matter what changes and transmutations it may have undergone and however much it may be increased in value by the expenditure of labor upon it; provided only that the product is still a chattel and composed of the original materials. Thus, if logs be sawed into lumber and the lumber be made into an article of furniture, the owner of the logs may recover the article of furniture. *Sunnyside Coal & Coke Co.* v. *Reitz,* 39 N. E. Rep. 541; *Ellis* v. *Wire,* 33 Ind. 127.

A court of law, as a general rule, deals only with the legal title, and when the legal identity of a chattel is destroyed, or cannot be specifically traced into another thing, such court is unable to give relief except by action for damages, against the wrongdoer or person, who converted it. But courts of equity, having greater powers, endeavor to afford a more complete remedy. Thus any property, either real or personal, held by a fiduciary or trustee and denominated a trust, may be reached after it has changed its character and lost its original form.

The equity rule is that trust property may be followed by the beneficiary so long as its identity can be ascertained. If a trustee or other fiduciary wrongfully dispose of his principal's property, equity imposes a constructive trust upon the new forms or species into which it is converted, so long as it can be traced or followed and its identity ascertained. 2 Pom. Eq. Juris., sections 1050, 1058; 2 Story Eq. Juris., sections 1258, 1259;

The principle upon which this rule rests is a very plain and just one. It is founded upon the right of property. The trust property rightfully belongs to the *cestuis que trust* and a change in its form does not change its ownership. So long as either the original or substituted property can be traced or followed, equity will always attribute the ownership to the beneficiary and will not allow the right to be defeated by the wrongful act of the fiduciary, no matter what form it may assume.

The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between the *cestuis que trust* and the trustee and all parties claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust. *Pennell* v. *Deffell*, 4 De G. M. & G. (Eng. Ch.) *372.

It was formerly held that these rules came to an end the moment the means of ascertaining the identity of the trust property failed. *Taylor* v. *Plummer*, 3 Maul. and S. (King's Bench) 562. In the case of trust moneys commingled by the trustee with his own moneys, it was held that money has no ear-marks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment failed.

But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust. And if the trustee deposited the trust funds with his own funds in bank, and then drew upon the commingled funds, he was pre-

sumed to have drawn out his own funds first, and that the remaining funds belonged to the trust. It is not to be presumed that the trustee would commit a wrong and use the trust funds when he had moneys of his own idle in the bank. *Clayton's Case,* 1 Mer. 572. The above rules applied only to express trusts.

But many cases arose in which it was impossible to trace the trust funds beyond the point of conversion. The means of ascertainment failed. And many cases arose which were not express but resultant or constructive trusts. Here again equity came to the relief of the beneficiary. The case of *Knatchtbull* v. *Hallett,* L. R. 13 Ch. Div. 696, is considered an enlargement or expansion of the former equitable rules. |It was there held that if money be received by a person in a fiduciary character, though not as a technical trustee, and he pays it into his own account in bank, the person for whom he received the money might follow it and have a charge on the balance in the bank as shown by the account. The principle here announced has been followed by the Supreme Court of the United States, and by other courts of last resort. *Nat'l Bank* v. *Insurance Co.,* 104 U. S. 54; *Peak* v. *Ellicott,* 30 Kas. 156; *Nat'l Bank* v. *Stillwater Gas Co.,* 30 N. W. Rep. 440; *Cont. Nat'l Bank* v. *Weems,* 6 S. W. Rep. 802; *Davis* v. *Western Ins. Co.,* 81 Ia. 496. There are courts, however, that refuse to follow this latter doctrine. *Illinois Trust Co.* v. *Smith,* 21 Blach. 275; *Philadelphia Nat'l Bank* v. *Dowd,* 38 Fed. Rep. 172.

In case of the insolvency of the fiduciary, the equitable doctrine above stated has been further expanded. If the trust property, either in its original or substituted form, can be traced into the assets in the hands of the insolvent, or of his assignee, the fiduciary may have a lien established or a preference decreed over the claims

MAY TERM, 1895—VOL. 13.    549

Windstanley *et al. v.* Second National Bank of Louisville, Kentucky.

of the general creditors, although the identity of the trust funds is lost. But in such cases it must be made to appear that the trust property is actually represented in the assets. *Cavin* v. *Gleason*, 105 N. Y. 256.

There are courts which go still farther than this, and hold that the beneficiary in the trust is entitled to a preference over the general creditors, although the insolvent may have used the trust property or funds for the payment of his debts and although the trust property never entered into the estate of the insolvent nor is represented in his assets. *McLeod* v. *Evans*, 66 Wis. 401; *Francis* v. *Evans*, 69 Wis. 115; *Carley* v. *Graves*, 85 Mich. 483.

We are of the opinion that the latter cases have reached an extremity that can scarcely be upheld upon equitable and just grounds. It is the purpose of equity to do justice, and it should not be perverted so as to work injustice. Thus if an agent collect a thousand dollars for his principal and, without commingling it with his own funds, invest it in a speculation and lose it, and then fails, the trust funds are not represented in his assets, and it would be inequitable to his general creditors to give the beneficiary a preference. If the agent should take the money and apply it to the payment of his debts, or use it for other purposes, so that it is consumed, it would then form no part of his estate. The beneficiary under such circumstances is not equitably entitled to a preference. Whilst it is true that in using the money to pay his debts it may have inured to the benefit of the estate, still this may be said of all contract debts. "In a very general sense, all creditors of an insolvent may be supposed to have contributed to the assets which constituted the residuum of his estate." *Cavin* v. *Gleason, supra.* We know of no reason founded in justice why the beneficiary should have a

superior right over the general creditors under such circumstances.

In the case in hearing, if the moneys collected were deposited in the bank and commingled with other moneys, the appellee would be entitled to have a preferred charge against the funds remaining in the bank, if any; and if the moneys went into the property now represented by the assets in the hands of the assignee, the appellee would be entitled to a preference over the other general creditors. But there is nothing in the findings to show what was done with the moneys collected. Whilst it is true that the presumption is that they were deposited, or became a part of the assets, this presumption is not conclusive, for they may have been diverted to other purposes.

It is a familiar rule that a party seeking to invoke the judgment of the law must produce the facts which will support the judgment; and no inferences or intendments will be indulged in favor of a special finding or verdict. The facts found do not support the judgment rendered.

Judgment reversed, with instructions to sustain appellants' motion for a new trial, and for further proceedings in accordance with this opinion.

Filed November 8, 1895.