William L. FALL, Petitioner-Appellant,

v.

Constance MILLER,
Respondent-Appellee.

No. 1–683A193.

Court of Appeals of Indiana,
First District.

April 24, 1984.

Rehearing Denied May 31, 1984.

Robert J. Bremer, Calbert, Bremer & Pierson, Greencastle, for appellant.

James M. Houck, Houck & Houck, Greencastle, for appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Petitioner-appellant William L. Fall (Fall) appeals a decision of the Putnam Circuit Court overruling specific legatee Fall's petition objecting to the Final Account and proposed distribution of the estate of Leah Curnutt (Decedent) prepared by respondent-appellee Constance Miller (Executrix).

We reverse.

## STATEMENT OF THE FACTS

On November 6, 1980, the decedent died testate, and by the terms of her will, bequeathed certain corporate stock to Fall. During the course of the administration, though the gross estate was in excess of $80,000.00 and the debts and expenses were less than $25,000.00, and though there was no necessity to sell the stock, the Executrix filed her petition with the court, without Fall's knowledge and consent, to sell the stock, falsely alleging therein that it was necessary to do so to pay debts of the estate. The court granted its petition and in March, 1981, the Executrix sold the stock for $33,476.29. However, in November, 1981, the attorney for the Executrix candidly acknowledged in a letter to Fall that a mistake had been made and promised Fall compensation for or substitution for the erroneously sold stock. Thereafter, without Fall's knowledge and consent, the Executrix reacquired on the market equal shares of the same stock for $24,671.63. In her final account she proposed to distribute those shares to Fall and retain the $8,804.60 profit to be divided between herself and other residuary legatees. From an adverse ruling on his objections to the final account challenging that proposal, Fall appeals.

## ISSUES

Fall presents two issues on appeal. He claims the trial court erred in:

I. Permitting the Executrix and other residuary legatees to keep and share the profits derived from dealing in his stock.

II. Not awarding interest on a specific legacy.

## DISCUSSION AND DECISION

*Issue I: Specific Legacy*

Both parties agree that the stock is a specific legacy and enjoys priority over general and residuary bequests, and that general and residuary bequests abate before specific bequests under IND.CODE 29-1-17-3. However, the Executrix argues that Fall is only entitled to receive his distribution in kind, which he did, and so her fiduciary duty is satisfied, and Fall is not entitled to any of the profit.

We first observe that the term "fiduciary" includes a personal representative. IND.CODE 29-1-1-3. Further, it is conceded that the Executrix had no right to sell the stock and it was a breach of her duty to do so. A personal representative is regarded as a trustee appointed by law for the benefit of and the protection of creditors and distributees. 13 I.L.E. *Executors and Administrators* Secs. 3 and 71 (1959). Under IND.CODE 29-1-16-1, a personal representative "shall not be entitled to any profit by the increase ..." in the assets of the estate, and is liable for "negligent or willful" acts.

There is a thread which runs through the law governing fiduciary relationships which forbids a person standing in a fiduciary capacity to another from profiting by dealing in the property of his beneficiary, and any such profit realized must be disgorged in favor of that beneficiary. In *Brown v. Brown,* (1956) 235 Ind. 563, 135 N.E.2d 614, the court discussed constructive trusts:

" 'A constructive trust, or as frequently called an involuntary trust, is a fiction of equity, devised to the end that the equitable remedies available against a conventional fiduciary may be available under the same name and processes against one who through fraud or mistake or by any means ex maleficio acquires property of another.' " 3 Bogert Trusts Pt. 1, ch. 24, Sec. 471, p. 6.

The rule is firmly established in Indiana that fraud, actual or constructive, constitutes an essential ingredient of a constructive trust. *Terry v. Davenport* (1916), 185 Ind. 561, 571, 112 N.E. 998; *Alexander v. Spaulding* (1903), 160 Ind. 176, 181, 66 N.E. 694; *Noe v. Roll* (1893), 134 Ind. 115, 119, 33 N.E. 905.

"Constructive fraud is fraud which arises by operation of law, 'from acts or (a) course of conduct which, if sanctioned by law, would, either in the particular case,

or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud.' *Leader Publishing Co. et al. v. Grant Trust and Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N.E. 121." *Ballard v. Drake's Estate* (1937) 103 Ind.App. 143, 148, 5 N.E.2d 671.

Constructive fraud has also been defined as 'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.' *Daly v. Showers* (1937), 104 Ind.App. 480, 486, 8 N.E.2d 139.

Such acts or breach of duty may include mistake, undue influence, or duress. 3 Bogert Trusts Pt. 1, ch. 24, Sec. 474, p. 26; 3 Scott on Trusts, Sec. 462.2, p. 2317.

There is no unyielding rule or formulae for the describing of a constructive trust. *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380. 122 N.E. 378, 381.

235 Ind. at 567–8, 135 N.E.2d 614.

In *Ross v. Thompson,* (1957) 128 Ind. App. 89, 146 N.E.2d 259, the court addressed the rights of a beneficiary. Quoting from *Windstanley v. Second National Bank of Louisville, Kentucky,* (1895) 13 Ind.App. 544, 546, 41 N.E. 956, the *Ross* court said:

"A court of law, as a general rule, deals only with the legal title, and when the legal identity of a chattel is destroyed, or cannot be specifically traced into another thing, such court is unable to give relief except by action for damages, against the wrongdoer or person, who converted it. But courts of equity, having greater powers, endeavor to afford a more complete remedy. Thus any property, either real or personal, held by a fiduciary or trustee and denominated a trust, may be reached after it has changed its character and lost its original form.

The equity rule is that trust property may be followed by the beneficiary so long as its identity can be ascertained. If a trustee or other fiduciary wrongfully dispose of his principal's property, equity imposes a constructive trust upon the new forms or species into which it is converted, so long as it can be traced or followed and its identity ascertained. 2 Pom.Eq.Juris., sections 1050, 1058, 2 Story Eq.Juris., sections 1258, 1259. The principle upon which this rule rests is a very plain and just one. It is founded upon the right of property. The trust property rightfully belongs to the cestuis que trust and a change in its form does not change its ownership. So long as either the original or substituted property can be traced or followed equity will always attribute the ownership to the beneficiary and will not allow the right to be defeated by the wrongful act of the fiduciary, no matter what form it may assume.

The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between cestuis que trust and the trustee and all parties claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, *and all the fruits of such property,* whether in its original or altered state, continue to be subject to and affected by the trust." (Original emphasis deleted, our emphasis added).

IND.CODE 30-4-3-11(b), applicable to trusts, provides that if the trustee commits a breach of trust he is liable to the beneficiary:

"(2) *for any profit* made by the trustee through the breach." (Our emphasis).

It is stated in *Henry's Probate Law and Practice,* Vol. 2B Sec. 6, that an executor must disgorge any gain from estate investments in his own activities, or other improper use. In *Thomasson v. Brown,* (1873) 43 Ind. 203, the court held that a third person receiving notes belonging to

the estate in exchange for property sold to the administrator for his own use, with notice of the true character of the transaction and notes, could not hold the notes *or the profits therefrom* from the person rightfully entitled thereto because the transfer was a breach of duty by the administrator. Other authorities discussing the tracing of profits and the duties and limitations of an executor in dealing with estate property are set out below.

It has also long been the law that an executor cannot mingle estate funds with his own money, and he cannot make a profit for himself from the use of estate funds. *Forsyth v. Woods*, (1871) 11 Wall. 484, 20 L.Ed. 207. Furthermore, a personal representative is personally liable for all profits derived from property of the decedent's estate. *Evans v. Hardy*, (1881) 76 Ind. 527; *Hendrix v. Hendrix*, (1879) 65 Ind. 329; and 31 Am.Jur.2d, Executors and Administrators, Sec. 267. Where an executor converts assets of an estate, he is chargeable with the value of the converted property and all the profits made during the period of conversion. *Cates v. Cates*, (1958) 268 Ala. 6, 104 So.2d 756. A legatee may either charge the personal representative with the value of the converted property or elect to claim and pursue the property for which it has been exchanged. *Jose v. Lyman*, (1944) 316 Mass. 271. 55 N.E.2d 433. The executor shall be held accountable for any profits realized from the use of the estate's money. *Walls v. Walker*, (1869) 37 Cal. 424.

In Indiana, an executor is personally liable for loss where he deposits trust funds in a bank in his individual name. *Corya v. Corya*, (1889) 119 Ind. 593, 22 N.E. 3. The fiduciary character of an executor extends to all legatees, and he cannot purchase the legacy of any of them for his benefit or the benefit of the other legatees. *Goodwin v. Goodwin*, (1874) 48 Ind. 584. The Indiana Probate Code specifically charges the personal representative with the responsibility of collecting and preserving all assets of the decedent's estate. IND.CODE 29–1–1–1. Furthermore, a personal representative who sells personal property of the estate does so at his peril. IND.CODE 29–1–5–8 and 29–1–16–1. Title to decedent's personal property vests in the executor where it remains until the property is sold and the proceeds applied to the payment of the decedent's debts and the expense of administration, or until it is distributed to the heirs. However, the executor does not have absolute power over the personal property, but must dispose of it in the manner and mode prescribed by statute or by order of the Court. *Root v. Blackwood*, (1950) 120 Ind.App. 545, 94 N.E.2d 489.

The executrix cites no relevant authority whatsoever to support her acts. We conclude that the above authorities are clearly applicable to the case at bar. The executrix held Fall's stock in a fiduciary capacity, and wrongly sold it, even if by mistake. Neither she nor anyone claiming through her should be permitted to retain the profits or fruits of the transaction. Fall, as equitable owner of the stock, subject only to abatement for payment of debts, is entitled to his stock and all profits made by the executrix in wrongfully dealing in it. One rationale for the rule is that the property which generated the profit belonged to Fall and in equity and good conscience the profit should belong to him. A more persuasive rationale is that if a fiduciary is not allowed to retain any gain or profit from wrongful, speculative, or self-dealing transactions in his beneficiary's property and at the same time can be held liable for any loss incurred, an effective deterrent to such activity exists. Any other rule would only encourage residuary legatees in control of the estate to speculate in estate assets. Policy forbids such conduct.

*Issue II: Interest*

Fall next argues that he is entitled to interest upon the value of his legacy because it was distributed more than one year after the decedent's death. IND. CODE 29–1–17–8 provides that "[g]eneral legacies shall not bear interest, unless a

contrary intent is indicated by the will". It has been held that where an executor has improperly kept the legatees out of the use of their money, he is liable for interest thereon. *Dufour v. Dufour*, (1867) 28 Ind. 421. In *Key v. Sneed*, (1980) Ind.App., 408 N.E.2d 1305, 1307, this court discussed the import of the above statutory section as follows:

> "We think that section is inapplicable to the problem of income. That section is an outgrowth of a rule that as against residuary legatees, specific legacies will draw interest at the legal rate after the expiration of one year from the date of death of the testator. The purpose of the rule was to force timely closing of estates and to discourage residuary legatees in control of an estate from delaying settlement so that the accumulation of income from the property, which should rightfully be in the possession of the specific legatee, would benefit the residuary legatees. *In re McGregor's Estate*, (1936) 210 Ind. 546, 2 N.E.2d 395."

While some may argue that the above statute leaves unsettled the question of interest on specific legacies, we are of the opinion that Fall is entitled to statutory interest on his specific legacy which was never subject to abatement as there were sufficient other assets of the estate to cover administrative costs. The Decedent died on November 6, 1980, and on October 7, 1982, the Executrix distributed to Fall the replacement stock and the few original shares she had never sold. However, the Executrix then retained for the residuary legatees, including herself, $8,804.60 from the improper sale of specific legatee Fall's stock. Fall has never received the cash proceeds from the sale of his legacy as we have discussed already under issue one. The estate has always had sufficient funds to pay all debts and expenses without abating Fall's specific legacy. The Executrix has failed to state a single legitimate reason why she prolonged the administration of Decedent's estate well beyond one year. In view of the Executrix's improper sale of Fall's stock to the benefit of the residuary legatees and our long-standing policy fa-

voring the speedy settlement of estates, *In re McGregor's Estate*, (1936) 210 Ind. 546, 2 N.E.2d 395, we hold that Fall is entitled to statutory interest. Therefore, the trial court erred in denying Fall's petition seeking interest on his specific legacy from one year after the date of Decedent's death to the date of the distribution of Fall's entire legacy to him.

For the above reasons, this cause is reversed and the court is ordered to enter a judgment for Fall.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.