**Robert Eugene ZYGULSKI,**
**Debtor–Appellant,**

v.

**Douglas DAUGHERTY,**
**et al., Appellees.**

**No. 3:98 CV 0577 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 25, 1999.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on an appeal and cross-appeal of the Bankruptcy Court's Order of Non-dischargeability pursuant to 11 U.S.C. § 523(a)(6).

### JURISDICTION

Jurisdiction is premised on 28 U.S.C. § 158(a) as the underlying action is an appeal of a Bankruptcy Court's final order.

### PROCEDURAL HISTORY

On November 28, 1995, Debtor–Appellant, Robert Eugene Zygulski, (Zygulski) filed his voluntary petition under Chapter 7 of the Bankruptcy Code. Appellees, Douglas Daugherty, et al. (Daugherty), challenged the dischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(6) alleging that the debtor caused willful and malicious injury to the Appellees' property. The Bankruptcy Court conducted a four day trial and on March 3, 1998 found that $367,000.00 was excepted from discharge under 11 U.S.C. § 523(a)(6). The excepted amount was subsequently amended to reflect a total excepted amount of $260,000.00 plus appropriate pre-judgment interest.[1]

On August 17, 1998, Debtor–Appellant filed his Notice of Appeal. Appellees cross-appealed on August 27, 1998. Meanwhile, the debtor filed a request to convert his Chapter 7 petition to Chapter 13. On December 18, 1998 Appellees filed a Motion to Dismiss the appeal claiming it was moot due to the request for conversion. This Court denied said motion on January 25, 1999. The Court then granted both parties an extension of time until March 8, 1999 in which to file additional briefs and supporting documents. Having had an opportunity to thoroughly review all perti-

Joseph D. Bradley, South Bend, IN, for Robert Eugene Zygulski.

Robert J. Palmer, Sr., E. Spencer Walton, Jr., May Oberfell and Lorber, South Bend, IN, for appellees.

---

1. Daugherty contends this occurred after a March 4, 1998 *ex parte* communication with Debtor's counsel. Daugherty's counsel voiced concern regarding the amended judgment and on March 25, 1998 the court instructed the parties to submit further briefs on the issue of the amount of non-dischargeable liability. Daugherty claims the bankruptcy court explicitly refused to consider the evidence he presented and reduced the Debtor's judgment to $260,000.00 plus interest.

nent information relating to Zygulski's appeal of the non-dischargeability issue the Court now rules as follows.

## BACKGROUND

This case arises from the consequences of a "pyramid" type scheme run by Debtor's wife, Kathleen Zygulski (Kathleen).[2] Beginning in 1990, Kathleen apparently created fictitious Tax Deferred Annuity Accounts (TDA's) and Individual Retirement Accounts (IRA's) and then persuaded her family and friends to invest.[3] She also persuaded her husband to invest in the scheme. She set up an elaborate bookkeeping system and convinced her investors that the accounts were earning money. Her fictitious records and statements caused Zygulski to think that he was a millionaire with the potential to become a multi-millionaire due to the "investments". As a result, Zygulski purchased a parcel of land in Montana and invested in a two million dollar retirement project in Colorado. Meanwhile, instead of actually investing the hundreds of thousands of dollars Kathleen received she was using the proceeds to finance the land development and to pay household bills. As bills mounted, Kathleen was somehow able to continue her scheme even though some investors were becoming worried and the land developers were demanding payment. Finally, on March 23, 1994, she suffered a breakdown of sorts and committed herself to Charter Hospital. Apparently, this is when Zygulski first learned that all of the

IRAs and TDAs were fictitious.[4] Upon discovering the truth, Zygulski offered the plaintiffs and other investors a lien on the Colorado property. He also allegedly warned the investors not to go to the police.[5] For some reason, Zygulski was unable to reach agreement with the investors on the lien issue and ultimately sold the Colorado property, placing the net proceeds of $260,000.00 in an escrow account with his attorney. He also sold a smaller Colorado property for $81,500.00. What happened to this money is the basis of the Bankruptcy Court's judgment and this appeal. Apparently, Zygulski used the proceeds to pay for his wife's legal defense in her criminal trial, and to purchase a $275,000.00 vacation home in Michigan, a $130,000.00 condominium in Michigan and a $25,000.00 tractor. None of the proceeds went toward repayment of Kathleen's fraud.

During the Bankruptcy trial the appellees alleged that Zygulski willfully and maliciously injured them by dissipating funds rightfully theirs and by thwarting their attempts at recovery. The Bankruptcy Court agreed with the investors and originally held that $367,000.00 was excepted from discharge under 11 U.S.C. § 523(a)(6). This amount was later amended to reflect a total excepted amount of $260,000.00 plus appropriate pre-judgment interest. Zygulski appeals claiming that the Bankruptcy Court erred in imposing a constructive trust on the

2. Kathleen was arrested on criminal charges and was ultimately sentenced in state court on two counts of theft related to the scheme.

3. Kathleen had formerly worked for seven years as an insurance agent for Mutual of Omaha. She pretended to still be employed and used counterfeit documents bearing the Mutual of Omaha logo in furtherance of her scheme.

4. The Bankruptcy Court's Decision discusses a series of events occurring prior to Kathleen's hospitalization which at least alerted Zygulski to the fact that his financial situation was not what it seemed. It is apparent that he knew or should have known that some-

thing was wrong but chose to ignore the warnings. (Mem. of Decision at 83) Also, trial testimony indicates that Zygulski told at least one or two potential investors that he had met with and talked to a Mr. Anderson, who was in fact a fictitious person created by Kathleen. Anderson was supposedly using the investment monies to take over small companies in trouble, turn them around and sell them for a large profit thereby providing a huge return to the investors.

5. Zygulski allegedly told investors "If you go to the police I will use your own money to fight you. I'll go bankrupt and you'll get shit." (Mem. of Decision at 14, 87).

Colorado property. He further claims that the Bankruptcy Court erred in finding that he caused a "willful and malicious" injury. Finally, Zygulski claims that because he was not personally guilty of fraud and did not hold a confidential or fiduciary relationship to the investors the court also erred in excepting the amount from discharge.[6] Daugherty cross-appeals alleging that the decision to except the amount was correct but that the court's reduction of the total from $367,000.00 to $260,000.00 was erroneous.[7]

## I. STANDARD OF REVIEW

In reviewing a Bankruptcy court decision, this Court acts as an appeals court and applies the same standards of review as govern appellate review in other cases. *Sagamore Park Centre Assoc. Ltd. Partnership v. Sagamore Park Properties*, 200 B.R. 332 (N.D.Ind.1996). Accordingly, this Court reviews the Bankruptcy court's legal determinations *de novo* and reviews the Bankruptcy court's factual findings using a "clearly erroneous" standard. *Leibowitz v. Parkway Bank & Trust Co.*, 210 B.R. 298 (N.D.Ill.1997), *aff'd by In re Image Worldwide, Ltd.*, 139 F.3d 574 (7th Cir.1998); *Divane v. A & C Elec. Co., Inc.*, 193 B.R. 856 (N.D.Ill.1996), *appeal dismissed*, 105 F.3d 660 (7th Cir.1996); *Matter of Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir.1993); *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990). The Bankruptcy court's conclusions on mixed questions of law and fact and/or on questions pertaining to the application of facts to the law are reviewed *de novo*. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 88 (7th Cir.1986); *Williams v. C.I.R.*, 1 F.3d 502, 505 (7th Cir.1993), *reh'g denied; United States v. Levy*, 955 F.2d 1098, 1103 n. 5 (7th Cir.),

*cert. denied*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 62 (1992).

*De novo* review requires the district court to make an independent examination of the Bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *Smoker v. Hill & Assoc., Inc.*, 204 B.R. 966 (N.D.Ind.1997); *see also, Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990); *Calder*, 892 F.2d 629, 631. Accordingly, this Court now considers the merits of this appeal.

## II. DISCUSSION

Zygulski advances two arguments to support his position that the Bankruptcy Court erred in excepting any debts from discharge. The first argument concerns the imposition of a constructive trust. This is an issue of law that this Court reviews *de novo*. Zygulski's second argument and the main issue on appeal is that the Bankruptcy Court erred in finding that his debt was not dischargeable under 11 U.S.C. § 523(a)(6). This is ultimately an issue of fact and is subject to a "clearly erroneous" standard of review. *See Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994).

### A. CONSTRUCTIVE TRUSTS

A constructive trust arises in cases where the transaction involved is tainted by fraud, actual or constructive. In such cases, in order to prevent the wrongdoer from reaping a benefit from his fraud, a court of equity will construct a trust such as equity and good conscience

---

**6.** These factors were appropriately considered when the Bankruptcy Court found that §§ 523(a)(2)(A) and (a)(4) did not apply to the debt in question, however they are not applicable to the Bankruptcy Court's analysis of § 523(a)(6).

**7.** In fact, Daugherty contends the excepted amount should be increased to $611,500.00. ($462,500.00 for the sale price of the Colorado investment, plus $81,500.00 from the smaller Colorado property, plus a total of $57,500.00 paid on the Charlevoix property, plus a $7,000 deposit paid on the tractor).

requires in order to do justice to the parties affected by the fraudulent transaction.... It is the fraud or undue influence connected with the original transaction which justifies the court in constructing a trust and holding the wrongdoer responsible as a trustee maleficio. *Westphal v. Heckman*, 185 Ind. 88, 113 N.E. 299, 302 (1916); *Hicks v. State of Indiana*, 635 N.E.2d 1151, 1155 (Ind.Ct.App.1994). Indiana law describes a constructive trust as "a fiction of equity, devised for the purpose of making equitable remedies available against one who through fraud or other wrongful means acquires the property of another." *Hunter v. Hunter*, 152 Ind.App. 365, 283 N.E.2d 775, 779 (1972) (citing *Brown v. Brown*, 235 Ind. 563, 135 N.E.2d 614 (1956)). Nor does the transformation of property from one form to another deprive a beneficiary of the right to the trust property. That rule has been unchanged for at least 99 years. *Mervis Indus. v. Sams*, 866 F.Supp. 1143 (N.D.Ind.1994). It was set out in *Winstandley v. Second Nat'l Bank*, 13 Ind.App. 544, 41 N.E. 956 (1895); quoted verbatim in *Ross v. Thompson*, 128 Ind.App. 89, 146 N.E.2d 259 (1957), and quoted verbatim again in *Fall v. Miller*, 462 N.E.2d 1059 (Ind.Ct.App.1984). The equity rule is that trust property may be followed by the beneficiary so long as its identity can be ascertained. *Mervis*, 866 F.Supp. 1143, 1147–48. Accordingly, a "constructive trust" is a remedy for unjust enrichment, not a real trust and should be imposed only in limited circumstances. *In re Nova Tool & Engineering, Inc.*, 228 B.R. 678 (Bankr.N.D.Ind.1998); *Scholes v. Ames*, 850 F.Supp. 707 (N.D.Ill.1994), *aff'd* 56 F.3d 750 (7th Cir.1995); *Criss v. Bitzegaio*, 420 N.E.2d 1221 (Ind.1981); *Chosnek v. Rolley*, 688 N.E.2d 202 (Ind.Ct.App. 1997). The existence of grounds for imposition of a constructive trust does not lead to the conclusion that the "beneficiary" has an equitable, or any other, interest in the property; rather, the "beneficiary" has a particular remedy for a legal wrong. If

that remedy is granted, then the "beneficiary" has a right to immediate possession and ownership of the "res." *See In re Baxco Corp.*, 148 B.R. 855 (Bankr.N.D.Ill. 1992) ("The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary"). For example, if the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not the court says that the debtor holds the ring in "constructive trust" for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.1989). *See also, Fall*, 462 N.E.2d at 1063 ("The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld").

There is no question that much of the monies used by Zygulski for his property purchases came from Kathleen's deferred annuity scheme. Zygulski knew this when he sold the property and dissipated the assets, and yet he challenges the Bankruptcy court's imposition of a constructive trust claiming that there was no proof of his actual or constructive fraud. He mistakenly relies on references to the record pertaining to the Bankruptcy court's analysis of the applicability of § 523(a)(2)(A) and § 523(a)(4).[8] The court properly refused to apply either section because plaintiffs could not meet their burden of proof. However, when deciding to impose a constructive trust the Bankruptcy court specifically found that "[c]ertainly, the net proceeds from the sale of the Colorado property and the equity in the

---

8. A higher standard of proof is required under these sections.

Zygulski's real estate would have been available to repay investors if the debtor had not used the funds for other purposes." (Mem. of Decision at 85). Moreover, the court found that the debtor knowingly and maliciously dissipated assets in his possession thereby destroying any opportunity for plaintiffs to recover the assets through the constructive trust remedy provided under Indiana law. *Id.* After *de novo* review, this Court cannot find that the Bankruptcy court erred. Moreover, even if this Court determined that the Bankruptcy court erred in imposing a constructive trust on the Colorado property, the claim is still excepted from discharge because the Bankruptcy court properly applied § 523(a)(6) of the Bankruptcy Code. *See In re Foos,* 183 B.R. 149 (Bankr.N.D.Ill.1995) (party still has a remedy, it can seek to have its claim declared non-dischargeable under 11 U.S.C. § 523(a)).

## B. EXCEPTIONS FROM DISCHARGE UNDER § 523(a)(6)

 In an adversary proceeding to determine the non-dischargeability of a debt the burden of proof is on the plaintiff as to each element. *Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir.1992); *In re Kreps,* 700 F.2d 372, 376 (7th Cir.1983). *See also, In re Martin,* 698 F.2d 883, 887 (7th Cir. 1983). Section 523(a)(6) provides that debts resulting from a "willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. The Plaintiff has the burden of proof to show in the conjunctive that the acts or conduct of the Debtor complained of were both "willful and malicious." *In re Walters,* 176 B.R. 835 (Bankr.N.D.Ind.1994). Furthermore, the United States Supreme Court in the case of *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), held that the standard of proof in non-dischargeability proceedings under § 523(a) is a preponderance-of-evidence standard,

rather than the more stringent standard of clear and convincing evidence.

### 1. The "Willfulness" Requirement

 Federal law rather than state law controls as to whether an act is "willful and malicious" for the purposes of § 523(a)(6), although the Bankruptcy Court can look to State Tort Law for guidance. Mere negligence, reckless disregard, or even gross negligence is not sufficient to establish "willful" conduct under § 523(a)(6) by federal standards. The acts must be intentional and deliberate without just cause or excuse, which produces or results in harm or injury, but the debtor need not have a specific intent to cause the resulting harm or injury to the person or property of the plaintiff. It is the intent to do the act which is the operative legal event, and not the intent to do the harm. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 2d Sess. 365 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6320; *see also, In re Stanley,* 66 F.3d 664, 667 (4th Cir.1995) ("[W]illful means deliberate or intentional." (quotations omitted)); *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228 (6th Cir.1991) (same).

 In the present case, the Bankruptcy court found that Zygulski knowingly and willfully dissipated assets that he knew were purchased with monies from Kathleen's fraudulent investment scheme. The court concluded that even if Zygulski did not know prior to March, 1994 that the monies were not his he certainly knew no later than April 27, 1994 when he sold the property. Based on the ninety-two page Memorandum of Decision and the trial transcripts this conclusion is not clearly erroneous.

### 2. The "Malicious" Requirement

 The term "malicious" means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. See 3 Lawrence P. King

et al., Collier on Bankruptcy ¶ 523.16[1], at 523–110 (15th ed.1996); *see also, Matter of Garner*, 56 F.3d 677, 681 (5th Cir.1995) ("Willful means intentional and malicious adds the absence of just cause or excuse." (quotation omitted)); *In re Walker*, 48 F.3d 1161, 1164 (11th Cir.1995); *Vulcan Coals*, 946 F.2d at 1229. Malice may be constructive or implied. *In re Walker*, 48 F.3d at 1164; *In re Stanley*, 66 F.3d at 668. Implied malice may be demonstrated "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *In re Stanley*, 66 F.3d at 668 (quotation omitted and alteration in original); *see also In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice."). The Court should look to the totality of the circumstances in order to determine whether a debtor acted with malice, for dischargeability purposes. Bankr.Code, 11 U.S.C. § 523(a)(6); *In re Gresso*, 115 B.R. 628 (Bankr.N.D.Ind. 1990).

█ There are numerous cases holding that conversion falls within the ambit of § 523(a)(6). *See e.g. In re Mills*, 111 B.R. 186 (Bankr.N.D.Ind.1988); *In re Stanley*, 66 F.3d 664, 668 (4th Cir.1995); *In re Kimzey*, 761 F.2d 421, 425 (7th Cir.1985); *In re Lacina*, 162 B.R. 267, 274–76 (Bankr. D.N.D.1993); *In re Wehri*, 212 B.R. 963 (Bankr.D.N.D.1997); *In re Lindberg*, 49 B.R. 228 (Bankr.D.Mass.1985); See also, 10 Collier on Bankruptcy ¶ 523.12, pp. 523–91–92 (15th ed. rev.1997). In the present case, looking at the totality of the circumstances the Bankruptcy court found sufficient evidence of malice. The court held that "the totality of the evidence demonstrates that the debtor acted with a knowing and callous disregard of the rights of the investors after learning of Kathleen's misconduct" ... and "willfully and maliciously injured plaintiffs by converting

their property ..." (Mem. of Decision at 86). The court further found that debtor's malice was plainly evidenced in the statement he made to two plaintiffs, saying: "If you go to the police I will use your own money to fight you. I'll go bankrupt and you'll get shit." (Mem. of Decision at 87). This Court finds no error in the Bankruptcy court's assessment.

### III. PLAINTIFFS' CROSS–APPEAL

Plaintiffs contend that the Bankruptcy court erred in reducing the total amount excepted from discharge. Based on the evidence in the record, it is clear that at least the $260,000.00 net profit from the sale of the large parcel of Colorado property was properly excepted. The inclusion of interest charges was also proper. However, it appears that additional monies may also be relevant to the excepted amount, therefore, this Court remands this issue to the Bankruptcy court for further consideration.[9]

### IV. CONCLUSION

For the preceding reasons the Bankruptcy Court's decision to except from discharge under § 523(a)(6) is hereby **AFFIRMED**. The cause is remanded to the Bankruptcy court for the sole purpose of re-evaluating the total amount excepted from discharge.

IT IS SO ORDERED.

█

---

9. Specifically, the court should reconsider whether the profit from the sale of the smaller Colorado property is relevant and whether the monies spent on the two Michigan properties and the tractor should be included.