THOMASSON, ADMINISTRATOR, *v.* BROWN ET AL.

EXECUTOR AND ADMINISTRATOR.— *Promissory Note.—Assignment.*—If an administrator of an estate barter promissory notes of the estate and assign them for goods for his own use, it is a waste of the assets of the estate; and, if the assignee have knowledge, even from the nature of the transaction, that the administrator is thus acting in violation of his trust, the right of property in the notes is not divested, and he cannot hold the notes or profit by such purchase as against those rightfully entitled to them.

SAME.—It seems that, as our statute (2 G. & H. 528, sec. 159 ) authorizes a foreign executor or administrator to sue in the courts of this State, the bringing of evidences of debt by him to this State, from the foreign state in which administration has been granted, can not work a forfeiture of his title.

From the Lawrence Common Pleas.

*E. D. Pearson,* for appellant.

*G. H. Voss, B. F. Davis,* and *J. A. Holman,* for appellees.

WORDEN, J.—This was an action by the appellant against the appellees.

Issue, trial by the court, finding and judgment for the

defendants, a motion for a new trial on behalf of the plaintiff having been overruled, and exception taken. As no question is made upon the pleadings, it will be unnecessary to notice them specially. The question presented is, whether the finding was justified by the evidence.

The material facts, as shown by the evidence, are briefly as follows: Polly McMillan formerly resided in the State of Indiana, but she removed to the State of Tennessee, where she became domiciled, and where she died. As part of her assets, she left two promissory notes for four hundred dollars each, executed to her by Madison M. Wingfield, secured by a mortgage, executed by Wingfield and wife, on certain real estate in Lawrence county, Indiana, where Wingfield and wife resided. On the death of Polly McMillan, John H. McMillan, one of her sons, took out letters of administration upon her estate in Tennessee, and brought the notes and mortgage to Indiana, where, without filing a copy of his letters in any court, or instituting any action for the recovery of the money due on the notes, he bartered them and the mortgage to the appellee, Brown, for a stock of groceries and liquors, together with Brown's right to the house (a short unexpired term) in which the liquors were situated, in Lawrence county, Indiana.

The value of the property received by McMillan from Brown is variously estimated, ranging from two hundred and fifty to eight hundred dollars. The property mortgaged by Wingfield and wife is shown to have been of a value nearly or quite sufficient to pay the notes and interest.

McMillan carried on the establishment awhile and finally sold it out. He testifies that he bought the saloon for himself. There does not appear to have been any fraud or collusion in the matter further than such, if any, as is to be inferred from the face of the transaction. It may be observed that it appears clearly that Brown knew, when he bought and took an assignment of the notes and mortgage, that they belonged to the estate of Polly McMillan, and that the only authority which John H. McMillan had to assign them

was derived from his letters of administration. John H. McMillan never settled his administration in the court in Tennessee from which he derived his letters, nor did he account for the proceeds of the sale of the notes, but he tendered his resignation as such administrator, and it was accepted.

Brown foreclosed his mortgage against the Wingfields, making some purchasers of the equity of redemption parties, in the Lawrence Court of Common Pleas, and took personal judgment against Wingfield for any residue after exhausting the mortgaged premises.

Afterward, the present appellant, Thomasson, took out letters of administration in Lawrence county, Indiana, upon the estate of Polly McMillan, and filed the complaint herein, to set aside and declare void the assignment of the notes and mortgage, and for other special and general relief. All the necessary parties seem to have been before the court, in order to entitle the plaintiff to whatever relief may have been proper.

It may admit of some question whether John H. McMillan had any right, whatever, to sell and assign the notes and mortgage in Indiana by virtue of the administration granted to him in Tennessee. "In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicil of the deceased, it is to be considered that the title cannot, *de jure*, extend, as a matter of right, beyond the territory of the government which grants it, and the movable property therein." Story Conflict of Laws, sec. 312. Conceding that the title to the notes and mortgage vested in McMillan in Tennessee, where administration was granted to him, the question arises whether the title still continued in him when he brought them to Indiana, and whether he could here transfer them, so as to vest a title in the assignee. In the case of *Kilpatrick* v. *Bush*, 23 Miss. 199, it was held that an administrator, by removing the effects of his intestate beyond the limits of the state in which the administra-

tion was granted, forfeits his title to the property, and cannot sue in another state in his own name, for the recovery of such property. The property involved in that case was not notes or bills of exchange or other evidence of debt. Inasmuch as our statute authorizes a non-resident executor or administrator to sue in the courts of this State (2 G. & H. 528, sec. 159), it would seem that bringing evidences of debt here from the state or country in which administration was granted could not work a forfeiture of the title of the administrator.

We have concluded not to decide or intimate any opinion upon the question whether the Tennessee administrator could legally transfer the notes and mortgage in Indiana, inasmuch as the case must be decided for the appellant on other grounds, conceding such right to the foreign administrator.

Conceding the same right to the foreign administrator to collect and receive payment on the notes, and to assign and transfer them, as if he had been a domestic administrator, the question recurs whether the transfer in this instance can be upheld. We are clearly of opinion that it cannot. The bartering of the notes for the stock of groceries and liquors was clearly a breach of the duty of the administrator. It was a waste and a squandering of the assets. Brown, the purchaser, had full knowledge, from the nature of the transaction, that the administrator was acting in violation of his trust, and he cannot profit by his purchase, or hold the notes against those rightfully entitled to them. It may be admitted that under proper circumstances an executor or administrator may sell and transfer notes and bills due to his intestate. But in no case can he barter them for his own use, as was done in this case.

The authorities upon this question are clear and conclusive. In the case of *Miller* v. *Helm*, 2 Sm. & M. 687, Chief Justice SHARKEY, in delivering the opinion of the court (p. 696), uses the following language:

"The administrator, being the legal holder of negotiable

paper due the estate, may transfer it for legal purposes, and his indorsee will hold it. But an administrator can do no act lawfully, which is a breach of his duty. He is to administer, by paying the debts, and taking care of the estate; but he cannot convert it to his own use, and if he should do so, the right of property is not divested. He cannot appropriate the assets to the payment of his own debts, nor to the purchase of' property for himself. But being the legal holder of negotiable paper, he may transfer it; and if his indorsee be innocent, and not chargeable with connivance, he will hold it. If, on the other hand, the indorsee knows that such appropriation is illegal, then he cannot hold it. And as an administrator cannot appropriate such paper to the payment of his own debts, or to the purchase of property for himself, without a violation of duty, the indorsee who takes it for such purposes, knowing that it is a part of the assets, is a participant in the fraud, and cannot be allowed to profit by it."

In *Colt* v. *Lasnier*, 9 Cow. 320, the Chief Justice, after reviewing the cases, sums up the law on this subject as follows: "It seems to me, therefore, the correct rule, both in England and in this State, is, that any person receiving from an executor the assets of his testator, knowing that this disposition of them is a violation of his duty, is to be adjudged as conniving with the executor; and that such person is responsible for the property thus received, either as a purchaser or a pledgee."

In *Prosser* v. *Leatherman*, 4 How. Miss. 237, it was held to be a good defence to an action on a promissory note, that the note belonged to the estate of a deceased person, and that the plaintiff received it of the administrator in payment of an individual debt due by the latter, or in exchange for other property, with full knowledge of the fact.

In *Miller* v. *Williamson*, 5 Maryland, 219, it was held, that if a party dealing with an executor has reasonable ground for believing the executor intended to mis-

apply the money, or was in the very transaction apply-
ing it to his own private use, he can take no advantage
from the operation. See, also, the cases of *Pinckard* v.
*Woods*, 8 Grat. 140, and *Talbott* v. *Dennis*, 1 Ind. 471.

We are satisfied that Brown must be regarded, from
the character of the transaction, as having notice that the
sale thus made to him was a breach of the duty of the
administrator, and that therefore he can take nothing by
his purchase. The plaintiff was entitled to relief, but
whether he can be put in the position of Brown and
enabled by the judgment of the court to proceed and col-
lect the judgment which Brown has obtained, or whether he
must proceed to foreclose the mortgage against the Wing-
fields, is a question which is not before us. A new trial
should have been granted.

The judgment below is reversed, with costs, and the cause
remanded.

BUSKIRK, J., having been of counsel in the foreclosure
cause of *Brown* v. *Wingfield*, did not participate in the deci-
sion of this cause.