**In re the MARRIAGE OF Rick LANG, Appellant–Petitioner**

**and**

**Staria Lianne Lang, Appellee–Respondent.**

**No. 54A01–9601–CV–28.**

Court of Appeals of Indiana.

July 11, 1996.

Turner bore no personal liability.

S. Bryan Donaldson, Berry Capper, Donaldson & Tulley, Crawfordsville, for appellant.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, Gregory H. Miller,

Wernle Ristine & Ayers. Crawfordsville, for appellee.

## OPINION

ROBERTSON, Judge.

Rick Lang [Father] appeals the child custody, child support, and property distribution portions of the Decree which dissolved his marriage to Staria Lianne Lang [Mother]. Father raises three issues, none of which constitute reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that Father and Mother were married in 1981, and their one child was born in 1989. The dissolution petition was filed in 1994. The final hearing held in this matter spanned nine days, and the record consists of 12 volumes. The trial court entered 25 pages of findings in conjunction with its Decree.

Substantial evidence was presented that Father is pathologically and fundamentally self-centered, selfish, insensitive, manipulative, and deceitful. Throughout the marriage, Mother had wanted a child but Father had not. Father agreed to permit Mother to become pregnant on the condition that she would bear all the personal and financial responsibilities associated with the child. Since the child's birth, Mother has been almost completely responsible for all the care and expenses related to the child's shelter, food, and clothing. Father had expressed almost no interest in the child before the present custody battle began.

Father has continuously demonstrated indifference to the child's health problems. Although the child has been hospitalized for severe respiratory problems, each time for several days, Father visited the child in the hospital only once. On a couple of occasions before the child's fourth birthday, Father spanked him very hard with a board prompting an investigation by the Division of Family and Children.

During the marriage, Father was employed as an engineer in Crawfordsville, Indiana, earning approximately $50,000.00 per year. Mother worked in her family business in Chicago, Illinois, and also earned approximately $50,000.00 per year. Mother and child would stay in Chicago during the week and return to Crawfordsville on the weekends. However, Father did not spend much time with the child on the weekends because he was occupied with his hobby of farming.

On February 17, 1992, Mother was rendered quadriplegic in an automobile accident. Mother and Father received a structured settlement from insurance in the amount of $4,500,000.00, an amount insufficient to compensate Mother for her injuries. Evidence was presented that, due to the alienated nature of the marriage, the value of Father's claim for loss of consortium was negligible. Mother anticipates substantial future medical and equipment expenses which will require all the insurance settlement proceeds, as well as the income earned from the investment of these proceeds.

Mother has around the clock care givers (her arms and legs) to assist her with the child. She has obtained a special wheelchair and a van with a wheelchair lift. Substantial evidence demonstrated that, despite her disabilities, Mother does an excellent job parenting the child.

Once the annuity payments from the insurance settlement started arriving, Father quit his job, having determined there was no reason for him to work with the insurance proceeds coming into the household. Father appropriated $5,000.00 from each monthly annuity payment and also depleted funds from a savings account. Father has spent approximately $179,000.00 of the insurance proceeds, traveling extensively and spending $24,000.00 on a boat. Once the litigation is over, Father intends to move "out West" and live in the Rocky Mountains.

Sole legal custody of the child was awarded to Mother. Mother receives approximately $1,300.00 per month in disability insurance proceeds from her former employer's disability insurer. She also receives $898.00 per month in Social Security Disability on her own behalf and an additional $450.00 per month on behalf of the child. The trial court ordered Father to pay child support in the

amount of $121.00 per week based on income imputed at $50,000.00 per year, the amount he had earned before he quit his job.

The trial court valued the marital estate at $4,338,306.00. Over $4,000,000.00 in assets was directly attributable to the insurance settlement. The trial court awarded Wife assets worth $4,112,932.00 and Husband, $225,374.00, finding that the presumption of an equal division had been rebutted due to Wife's disability, the contribution of each spouse to the acquisition of the property, and the earning ability of each spouse. The trial court also entered findings to the effect that Father had dissipated assets.

## DECISION

### I.

### Child Custody

Father asserts the trial court erred in awarding sole legal custody to Mother. Father points out that the experts he hired recommended that he be awarded primary physical custody. He also asserts that Mother's disabilities prevent her from adequately disciplining the child.

As stated in *Hunsberger v. Hunsberger,* 653 N.E.2d 118 (Ind.Ct.App.1995), *trans. denied:*

> Ind.Code 31–1–11.5–21 states in pertinent part as follows:
>
> (a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:
>
> (1) The age and sex of the child;
>
> (2) The wishes of the child's parent or parents;
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>
> (4) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> (5) The child's adjustment to his home, school, and community; and
>
> (6) The mental and physical health of all individuals involved.
>
> We review a trial court's custody decision for an abuse of discretion. We will reverse a trial court only where the result reached is clearly against the logic and effect of the facts and circumstances before the court. We can not and will not reverse a trial court on the basis of conflicting evidence. Even if the evidence might support a conclusion different than the one reached by the trial court, we will not substitute our judgment for that of the trial court. In addition, because it is our duty to affirm the trial court's decision if it is supported by the evidence or its reasonable inferences, we view the evidence and its reasonable inferences in a light most favorable to the trial court's judgment.

*Id.* at 121–22 (Citations omitted). In its findings, the trial court quoted the following language from *In Re Marriage of Carney,* 24 Cal.3d 725, 157 Cal.Rptr. 383, 598 P.2d 36 (1979):

> On a deeper level, finally, the stereotype [of the unfitness of a quadriplegic parent] is false because it fails to reach the heart of the parent-child relationship. Contemporary psychology confirms what wise families have perhaps always known—that the essence of parenting is not to be found in the harried rounds of daily carpooling endemic to modern suburban life, or even in the doggedly dutiful acts of 'togetherness' committed every weekend by well-meaning fathers and mothers across America. Rather, its essence lies in the ethical, emotional, and intellectual guidance the parent gives to the child throughout his formative years, and often beyond. The source of this guidance is the adult's own experience of life; its motive power is parental love and concern for the child's well-being; and its teachings deal with such fundamental matters as the child's feelings about himself, his relationships with others, his system of values, his standards of conduct, and his goals and priori-

ties in life. Even if it were true, ... that [the handicapped parent] cannot do 'anything' for his sons except 'talk to them and teach them, be a tutor,' that would not only be 'enough' ... it would be the most valuable service a parent can render. Yet his capacity to do so is entirely unrelated to his physical prowess: however limited his bodily strength may be, a handicapped parent is a whole person to the child who needs his affection, sympathy, and wisdom to deal with the problems of growing up. Indeed, in such matters his handicap may well be an asset: few can pass through the crucible of a severe physical disability without learning enduring lessons in patience and tolerance.

157 Cal.Rptr. at 391, 598 P.2d at 44.

We approve of the language in *Carney*. Father's argument is merely an invitation to reweigh evidence. The evidence as set out in the FACTS section amply supports the trial court's award of sole legal custody in Mother. Therefore, we find no error.

## II.

### Child Support

Father asserts the trial court erred in imputing his income at $50,000.00. Father also argues that he should not be required to pay child support because Mother receives $450.00 per month in Social Security Disability benefits on behalf of the child.[1] Finally, Father argues that the trial court erred in failing to include the income earned from the investment of the insurance settlement proceeds in Mother's income in determining his child support obligation under the guidelines.

■ A trial court's child support order will be disturbed only if it is clearly erroneous. *Jendreas v. Jendreas,* 664 N.E.2d 367, 372 (Ind.Ct.App.1996). The income shares model set forth in the Indiana Child Support Guidelines apportions the cost of children between the parents according to their means, and is based on the premise that children should receive the same portion of parental income after a dissolution that they would have re-

ceived if the family had remained intact. *Id.* The guidelines provide that if a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. Ind.Child Support Guideline 3(A)(3); *Castaneda v. Castaneda,* 615 N.E.2d 467, 471 (Ind.Ct.App. 1993). A determination of potential income is made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. *Id.* Although the guidelines are not to be used as a tool to promote a society where all work to their full economic potential, they are predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together. *Id.*

■ In the present case, the evidence demonstrated that Mother required all the insurance settlement proceeds to meet her needs, exclusive of the needs of Father and the child. Therefore, if Father is to remain unemployed, the child's standard of living will ultimately decline as the proceeds become exhausted. Father has several years experience working as an engineer and had earned $50,000.00 per year when he quit his job because he determined there was no need for him to work due to the infusion into the household of the insurance settlement proceeds.

Father cannot be relieved of his obligation to support his child based upon the insurance benefits Mother received and continues to receive due to her disabilities; instead, he is required to pay according to his means. *See, Jendreas,* 664 N.E.2d at 372. The trial court did not err in imputing $50,000.00 of income to Father in computing his child support obligation.

■ The trial court is not required to reduce the payor parent's child support obligation by the amount of social security benefits received by a child. *Stultz v. Stultz,* 659 N.E.2d 125, 128, 130 (Ind.1995). The manda-

---

1. In her brief, Mother undergoes a calculation of Father's child support obligation under the guidelines assuming that the $450.00 payment is included in her income. The result is a reduction in Father's child support obligation of approximately $1.00 per week.

tory consideration is the standard of living the child would have enjoyed had the marriage not been dissolved. *Id.* at 129. As noted above, in *Jendreas,* 664 N.E.2d 367, we held:

[The payor parent] cannot be relieved of her obligation to support her child based upon the disability benefits [the child] receives as a result of [the custodial parent's] inability to work. Instead, she is required to pay according to her means.

*Id.* at 372.

In the present case, Father was not entitled to credit the $450.00 of Social Security Disability proceeds Mother received on behalf of the child against his support obligation. Therefore, we find no error.

■ Ordinarily, income from investments should be considered in calculating child support. *See Haverstock v. Haverstock,* 599 N.E.2d 617, 619 (Ind.Ct.App.1992). However, child support should not deny a parent a means of supporting him or herself at a subsistence level. *Cox v. Cox,* 654 N.E.2d 275, 277 (Ind.Ct.App.1995).

■ In the present case, the evidence demonstrated that Mother needed all the insurance proceeds, including the income earned on those proceeds, to meet her own needs. The structured settlement was invested in anticipation of Mother's future needs. The definition of "weekly gross income" to be used to calculate child support under the guidelines includes:

actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed and imputed income based upon 'in-kind' benefits.

Child Supp.G.3(A). The above definition does not include Mother's situation where the income from the investment of the insurance proceeds is to compensate her for her own disabilities. Under these circumstances, we cannot conclude that the trial court erred in excluding this income from its calculation.

### III.

#### Property Distribution

As noted in *In re Marriage of Stetler,* 657 N.E.2d 395 (Ind.Ct.App.1995):

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision is clearly erroneous or constitutes an abuse of discretion. That is, reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. We may not reweigh the evidence or assess the credibility of witnesses, we consider only the evidence most favorable to the trial court's disposition of marital property. Indiana Code 31–1–11.5–11(c), governing property distributions in contested divorces, reads as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

When effecting an unequal division of marital property, divorce courts are required to state the reasons based on the evidence which establish that an equal division is not just and reasonable. We presume the divorce court correctly followed the law

and made all the proper considerations in crafting its property distribution. The presumption in favor of the correct action by the trial court is one of the strongest presumptions applicable to our consideration on appeal.

*Id.* at 398 (Citations omitted).

Father argues the trial court's findings indicate that it erroneously considered fault in entering the lop-sided division. Father is correct that we do not tolerate the injection of fault into divorce proceedings. *See id.* at 399. Nevertheless, we presume the trial court correctly followed the law and made all proper considerations in crafting its property distribution. *Id.*

The trial court entered detailed findings and expressly justified the property distribution based on appropriate statutory factors listed under I.C. 31–1–11.5–11(c). Consequently, we cannot conclude that the trial court based its division on considerations of fault. The evidence set out in the FACTS section supports the trial court's finding that the relative contributions of the parties to the acquisition of the marital assets, their earning abilities, and economic circumstances justify the property distribution entered in this case. Therefore, we find no error.

Judgment affirmed.

BAKER and GARRARD, JJ., concur.