Jason L. INLOW, Heather N. Inlow Johnson, Jeremy H. Inlow, and Sarah C. Inlow, Appellants–Plaintiffs,

v.

ERNST & YOUNG, LLP and Geoffrey Gooch, Appellees–Defendants.

No. 49A05–0105–CV–225.

Court of Appeals of Indiana.

July 18, 2002.

———

Stephen B. Caplin, Caplin Park Tousley & McCoy, Marvin J. Frank, Esq., Robert M. Hamlett, Esq., Frank & Kraft, P.C., Indianapolis, IN, for Appellants.

Brian W. Welch, Kelley Bertoux Creveling, Bingham McHale, LLP, Indianapolis, IN, Stanley J. Parzen, James C. Schroeder, Mayer, Brown & Platt, Chicago, IL, for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jason L. Inlow, Heather N. Inlow–Johnson, Jeremy H. Inlow, and Sarah C. Inlow (collectively "the Inlows") appeal the trial court's granting of Ernst & Young, LLP and Geoffrey P. Gooch's (collectively "the accountants") motion to dismiss the Inlows' amended complaint.

We affirm, but remand with instructions for further proceedings.

### ISSUES

1. Whether the trial court erroneously granted the accountants' Indiana Trial Rule 12(B)(6) motion to dismiss.

2. Whether the trial court erroneously denied the Inlows' Motion For Leave To File Second Amended Complaint.

### FACTS

On May 21, 1997, Lawrence W. Inlow died as a result of a helicopter mishap. He died intestate, leaving a gross estate of approximately 180 to 185 million dollars, and was survived by a former wife and four children from his first marriage, as well as a wife and child from his second marriage. The estate is being supervised in the Hamilton Superior Court No. 2, Probate Division. The four children of Lawrence W. Inlow's first marriage are the appellants in this case.

On June 4, 1997, Karl W. Kindig ("Kindig") was appointed as the successor personal representative for the estate of Lawrence W. Inlow. On August 24, 1999, the four Inlow children of the decedent's first marriage filed their complaint in Marion Superior Court. The Inlows alleged that Kindig hired Ernst & Young "to provide accounting services" for the estate; that Gooch, one of Ernst & Young's employees, was not a licensed certified public accountant "at the relevant times;" and that the accountants were negligent in that they did not "follow accepted accounting principles." (Inlow App. 9–10). Pursuant to T.R. 12(B)(6), the accountants filed their motion to dismiss for failing to state a claim upon which relief could be granted. The accountants argued that the suit should have been dismissed because the Inlows lacked standing, were not in privity with Kindig and the accountants, and did not rely on any statements made by the accountants.

In an attempt to schedule the depositions of Gooch and Lorelei Tolson, an Ernst & Young employee, the Inlows filed their motion to compel discovery on December 20, 1999. The trial court set the matter for hearing on January 20, 2000. In their response filed on January 12, 2000, the accountants again argued that the Inlows did not have standing to bring suit, and that state and federal confidentiality laws prevented Gooch and Tolson from revealing the substantive nature of their work for the estate. On January 18, 2000, Kindig filed Personal Representative's Motion For Intervention And For Protective Order. In his motion, Kindig

also argued that his work for the estate was privileged unless the Inlows could "articulate areas of questioning that would not be covered by privilege." (Accountants' App. 18). The trial court held a hearing on January 20, 2000, took the matter under advisement, and the next day it denied the Inlows' motion to compel and Kindig's motion to intervene.

On March 3, 2000, the trial court issued an order granting the accountants' motion to dismiss. However, the Inlows filed an amended complaint on March 9, 2000. In their amended complaint, the Inlows alleged malpractice, negligence, misapplication of entrusted property, conversion, and gross negligence. The Inlows asserted that the accountants "failed to timely inform Mr. Kindig of the federal income tax obligations of the Inlow Property for the fiscal year ending January 31, 1999, that and as a direct and proximate result, the Inlow Property paid more than [$250,000] in interest." (Inlow App. 51). The Inlows claimed the estate was subject to significant tax penalties, had been encumbered with liens, had lost value, and would continue to lose value in the future.

On March 22, 2000, the accountants filed their motion to dismiss the Inlows' amended complaint pursuit to T.R. 12(B)(6). Again, the accountants argued that the Inlows did not have standing to bring suit on behalf of the estate; and, that they were not in privity with the accountants and Kindig.

On April 6, 2000, the Inlows requested a hearing on the accountants' motion to dismiss; the trial court set the matter for hearing on May 15, 2000. At the hearing, the accountants' counsel argued that only the personal representative is authorized to bring suit on the estate's behalf; to allow potential beneficiaries to bring suit would interfere with the efficient administration of the estate. In addition, the accountants' counsel argued that Indiana's probate code grants Kindig, and not the Inlows, present title to all personal property while administering the estate. Finally, counsel argued that unless a close relationship is pled, a cause of action cannot be brought by a third party against a professional hired by the personal representative "attempting to close out an estate. . . ." (Accountants' App. 74).

In response, the Inlows' counsel argued that on a motion to dismiss pursuant to T.R. 12(B)(6), the trial court must accept their pleading as true, and that the accountants had not met their burden of proving that there was no set of facts under which the Inlows could prevail. In addition, the Inlows' counsel argued that the Inlows are entitled to bring suit to recover for damages done to their property because they had received a present possessory interest to both real and personal property when Lawrence W. Inlow died.

After hearing the parties' arguments, the trial court took the matter under advisement. On June 8, 2000, the trial court issued an order granting the accountants' motion to dismiss the Inlows' amended complaint, but it did not enter final judgment. On June 28, 2000, the Inlows filed their notice of appeal. On September 19, 2000, the trial court ordered the parties to enter into mediation.

While their appeal was pending, the Inlows and Kindig executed a mediated agreement on November 15, 2000. Under the agreement, (1) Kindig agreed to resign as personal representative; (2) the Inlows agreed not to sue Kindig; (3) the parties agreed to choose a successor personal representative; (4) Kindig and the successor personal representative would serve as co-administrators for a short period of time; (5) the successor personal representative would pay Kindig $200,000 for his past services rendered to the estate; and (6) Kindig and the successor personal repre-

sentative would execute an assignment of rights, claims, and causes of action he may have had against the accountants in favor of the Inlows. The relevant portion of the assignment assigns certain rights to the Inlows as follows:

all of the right, title and interest of the Estate, and of the Personal Representatives thereof, in and to all claims, choses in action or rights of action against any person, firm, corporation or other entity which the Estate and/or Kindig has or may have . . . .

(Inlow App. 137).

On November 17, 2000, the Inlows filed a petition seeking the probate court's approval of the mediated agreement. The probate court heard argument on November 20, 2000. The probate court found that the agreement was in the best interest of the Estate and the heirs, approved the mediated agreement, and appointed Fifth Third Bank of Indiana to serve as successor personal representative "upon its acceptance and qualification for such service, . . . ." (Inlow App. 135).

"On or about January 16, 2001," the Inlows came into possession of an unsigned letter of understanding on Ernst & Young letterhead sent from Gooch to Kindig. (Inlow App. 104). The relevant portion of the letter stated:

Ernst & Young will provide tax and consulting services as requested by you or legal counsel employed by the Estate. Such services will include general and specific tax consulting services, as well as compliance services relating to the preparation of the federal estate tax return (Form 706), federal and Indiana fiduciary income tax returns, and the preparation of the Indiana inheritance tax return . . . .

(Inlow App. 120).

On February 2, 2001, the probate court issued a second, more detailed order approving the court ordered mediated agreement and appointment of Fifth Third Bank as successor personal representative. However, the probate court stated that it was "not making any ruling and expresses no opinion on the existence or validity of any claims or the effectiveness or validity of any assignment on any grounds." (Accountants' App. 100).

A few days before the Inlows were to file their reply brief in their appeal, the Inlows filed a Motion For Leave To File Trial Rule 60(B) Motion with the trial court on the basis of newly discovered evidence. The accountants filed their response alleging that the Inlows' newly discovered evidence "[did] not provide a basis for ruling under Trial Rule 60(B)(2) and the events occurring since the order of dismissal were not relevant to this appeal." (Inlow App. 100).

On April 20, 2001, this court issued an order dismissing the Inlows' appeal without prejudice because the trial court did not enter a final judgment. We found that the granting of the motion to dismiss was merely an "interlocutory order, not appealable by right." (Inlow App. 101).

On April 24, 2001, the Inlows filed their Motion For Leave To File Second Amended Complaint. The Inlows asserted that the trial court should grant their motion because they "have recently discovered evidence which would have greatly strengthened their claims against the Defendants." (Inlow App. 103). In addition, the Inlows argued that their motion should be granted because Kindig and Fifth Third Bank had assigned "whatever claims he has or might have" against the accountants. (Inlow App. 105).

On May 9, 2001, the accountants filed a motion for the trial court to enter final judgment confirming the June 8, 2000 order granting their motion to dismiss. The accountants argued that the Chronological Case Summary shows this case as being

disposed, and that the Inlows filing of their notice of appeal after the June 8, 2000 order demonstrated an understanding that this case had been dismissed. On May 10, 2001, the trial court denied the Inlows' motion, granted the accountants' motion to enter final judgment, dismissed the Inlows' "action with prejudice," and entered final judgment. (Inlow App. 143). The Inlows appeal.

## DECISION

### 1. Motion to Dismiss

The Inlows argue that the trial court erroneously granted the accountants' T.R. 12(B)(6) motion to dismiss. Specifically, they argue that the accountants have not met their burden of showing that there is no set of facts upon which the Inlows could succeed at trial. The accountants counter that the Inlows do not have standing because only Kindig, as personal representative, has the authority to bring suit on behalf of the estate.

A motion to dismiss under T.R. 12(B)(6) is made to test the legal sufficiency of the claim, not the supporting facts. *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49 (Ind.Ct.App.1993), *trans. denied.* On review, we determine whether the complaint states any allegation upon which relief could be granted. *Id.* A complaint cannot be dismissed under T.R. 12(B)(6) unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Id.* Further, a complaint need not state all elements of a cause of action. *Id.* We must take the facts alleged in the complaint as true and determine whether, in a light most favorable to the plaintiff, the complaint is sufficient to constitute a valid claim. *Id.*

To state a claim for relief, a complaint need only contain a short and plain statement of the claim, and a demand for relief. Ind. Trial Rule 8(A). Under our notice pleading rule, it is not necessary for the complainant to outline a specific legal theory to which he or she will adhere throughout trial. *Noblesville Redevelopment Comm'n v. Noblesville Associates Ltd. P'ship*, 674 N.E.2d 558 (Ind.1996). A complaint is sufficient if it puts a reasonable person on notice as to why the plaintiff sues. *Id.*

In this case, we find that the Inlows' amended complaint gives the accountants notice as to why the Inlows have sued. The Inlows filed a six count amended complaint alleging the following causes of action: accounting malpractice, negligence, that the Inlows were third party beneficiaries, misapplication of entrusted property, conversion, and gross negligence. The Inlows' accounting malpractice claim alleged that Gooch was not a certified public accountant and that the accountants failed to give timely advice; all of which led to the decline in the estate's value. The Inlows' negligence claim alleged that they were the heirs at law to the estate, and that any loss in value to the estate was the direct and proximate result of the accountants' actions. Their third party beneficiary claim alleged that the accountants had a duty not to injure the estate because the contract between themselves and Kindig was intended to directly benefit the Inlows' interests in the estate. The Inlows' misapplication claim alleged that the accountants "knowingly and/or intentionally aided, induced or caused Mr. Kindig to misapply" their interests in the estate, and that the accountants' actions constituted deception. (Inlow App. 54). Their conversion claim alleged that the accountants "knowingly and/or intentionally aided, induced or caused Mr. Kindig to exert unauthorized control over" their interests in the estate. (Inlow App. 56). Finally, the Inlows' gross negligence claim alleged that the alleged acts of malpractice, negligence, misapplication, and conversion "were grossly negligent, wanton, willful, and

reckless in regard to" their interests in the estate. On the face of the amended complaint, it is clear that the accountants were given sufficient notice of the claims being brought by the Inlows.

Further, the accountants' motion to dismiss the amended complaint evidences an understanding of the claims brought by the Inlows. In their motion, the accountants asserted that the Inlows "have not alleged facts sufficient to sue ... under a negligence-based cause of action because they do not allege privity or a relationship between" the Inlows and themselves. In addition, the accountants asserted that the Inlows failed to state a claim as a third party beneficiary because the Inlows did not mention any contract between Ernst & Young and the estate. Further, the accountants argued that no claim was stated concerning deception because "[the Inlows] failed to allege [that the accountants] misapplied any of their entrusted property," and no claim was stated "for criminal conversion because [the Inlows] fail[ed] to allege that [the accountants] exerted any unauthorized control over their identifiable chattel." (Inlow App. 60). While these assertions may be an appropriate response in an answer to the Inlows' amended complaint, we have already noted that the Inlows are not required to plead all the elements of a cause of action nor are they required to outline a specific legal theory. *Gray,* 624 N.E.2d 49; *Noblesville,* 674 N.E.2d 558. The Inlows' amended complaint must merely provide the accountants with sufficient notice of the cause of action brought against them. This was done.

As a result, what remains before us is to determine whether it appears to a certainty that the Inlows would not be entitled to relief under any set of facts. *Gray,* 624 N.E.2d 49. The accountants' primary contention is that relief cannot be granted under any set of facts because the Inlows do not have standing to bring suit. Specifically, the accountants argue that under Indiana law only the personal representative has the authority to bring suit on behalf of the estate. If this is true, no set of facts exists under which relief can be granted to the Inlows. Therefore, we now consider whether heirs of an estate can bring suit against a professional who was hired by the estate's personal representative to provide services for the estate.

In support for their assertion that only the personal representative can bring suit against a professional hired by the estate, the accountants have cited numerous cases dating back before Indiana enacted its Probate Code in 1953. *See Newton v. Hunt,* 122 Ind.App. 146, 103 N.E.2d 445 (1952) (administrator of estate can bring action to recover assets of estate for distribution to beneficiaries); *Umbstead v. Preachers' Aid Society,* 223 Ind. 96, 58 N.E.2d 441 (1944) (noting that personal property of the decedent and the right to any action passes to the personal representative); *Baker v. State Bank of Akron,* 112 Ind.App. 612, 44 N.E.2d 257 (1942) (only personal representative can bring action to recovery money or personal assets of the decedent necessary to administer the estate); *Smith v. Massie,* 93 Ind.App. 582, 179 N.E. 20 (1931) (the right to sue to recover money and personal property belongs to personal representative and not surviving widow or widower); *Magel v. Milligan,* 150 Ind. 582, 50 N.E. 564 (1898) (heirs have no right to sue to recover debts owed to the estate); *Holland v. Holland,* 131 Ind. 196, 30 N.E. 1075 (1892) (unless given permission by administrator, legatee has no standing to bring action to recover estate assets from third party); *Clegg v. Bamberger,* 110 Ind. 536, 9 N.E. 700 (1887) (administrator can bring action for conversion against attorney hired by decedent); *Henry v. State ex rel. Franklin,* 98 Ind. 381 (1884) (administrator represents credi-

tors in collection against estate and may bring action for conversion to secure assets due the estate); *Schee v. Wiseman,* 79 Ind. 389 (1881) (personal property of decedent and right to cause of action for trespass passes to administrator); *Smith v. Dodds,* 35 Ind. 452 (1871) (administrator is proper person to bring action for conversion and trespass to protect property of decedent); *Walpole's Administrator v. Bishop,* 31 Ind. 156 (1869) (only administrator may bring cause of action on behalf of estate); *Grimes v. Blake,* 16 Ind. 160 (1861) (administrator of estate may bring suit to recover overpayment to creditor).

■■■ These cases recognize the authority of the personal representative or administrator of an estate to bring suit to protect or recover property necessary to satisfy debts, pay taxes, or distribute assets to the rightful beneficiaries. Nevertheless, the question remains: whether the enactment of the Probate Code prohibits heirs from bringing suit against professionals hired by the personal representative. In 1953, Indiana enacted its Probate Code "for the protection of the public, the fiduciaries and persons having claims against an estate and heirs;" it controls all probate proceedings in Indiana. *Abbott v. Department of Public Welfare,* 243 Ind. 596, 189 N.E.2d 417 (Ind.1963). Under the Code, "[a] personal representative is regarded as a trustee appointed by law for the benefit of and the protection of creditors and distributees." *Fall v. Miller,* 462 N.E.2d 1059, 1061 (Ind.Ct.App.1984).

■■■ The Probate Code clearly indicates that upon the decedent's death,

his real and personal property, passes to persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it shall be subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with the expenses of administering the estate, the payment of other claims and the allowance is under IC 29–1–4–1, except as otherwise provided in IC 29–1.

Ind.Code § 29–1–7–23. Therefore, the personal representative, if necessary, has a duty to take possession of the decedent's real and personal property; and to pay taxes, collect rents due the estate, and maintain the buildings and fixtures under his or her control. Ind.Code § 29–1–13–1. The personal representative must also prepare an inventory indicating the value of each item of the decedent's property, and exercise reasonable diligence to discover creditors of the decedent. I.C. §§ 29–1–12–1; 29–1–7–7.5. Further, the personal representative is duty bound to manage and protect the assets in his possession for the benefit alike of both the creditors and beneficiaries by taking precautionary measures to prevent loss to the estate. *Matter of Robak,* 654 N.E.2d 731 (Ind.1995).

One of the precautionary measures that can be taken by the personal representative is to bring suit to recover and protect property belonging to the estate. The Probate Code outlines this option as follows:

Every personal representative shall have full power to maintain any suit in any court of competent jurisdiction, in his name as personal representative, for any demand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative; but he shall not be liable, in his individual capacity, for any costs in such suit, and shall have power, at his option, to examine the opposite party under oath, touching such demand.

Ind.Code § 29–1–13–3. Another option under the Probate Code is for the personal representative to bring an action "for the possession of real property or to determine the title to the same." I.C. § 29–1–13–1.

It is therefore clear that the Inlows, while potentially having a vested right of title in both real and personal property in the estate, have no right of immediate possessory interest in the real or personal property of the estate during its administration. This lack of immediate possessory interest and title in the estate brings into question whether the Inlows have standing and whether they are the real party in interest to bring this lawsuit. *See Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 197 (Ind.Ct.App.1999) (real party in interest objection is properly raised through T.R. 12(B)(6) motion to dismiss).

■■ The judicial doctrine of standing is similar to, but not identical with, the real party in interest requirement of Indiana Trial Rule 17. However, they are both "requirements intended to insure that the party before the court has the substantive right to enforce the claim being asserted." *Hosler*, 710 N.E.2d at 197. Standing focuses on whether the plaintiff is the proper person to invoke the court's power. *Id.* "Under the traditional private standing doctrine, a party must demonstrate both a personal stake in the outcome of the lawsuit and, at a minimum, that he is in immediate danger of sustaining some direct injury as a result of the conduct at issue." *Id.* at 197. Here, the Inlows are heirs at law to share in an estate worth 180 to 185 million dollars, and they have alleged a loss in value to the estate through the alleged malpractice and negligence of the accountants engaged by the personal representative. The Inlows' status as heirs is evidence of their personal stake in the lawsuit, and the potential devaluation of their shares as a result of the alleged conduct of the accountants places them in immediate danger of sustaining a direct injury. Therefore, we find that the Inlows have standing.

■ However, we must now consider whether they are the real party in interest. Indiana Trial Rule 17(A)(1) reads as follows:

(A) Every action shall be prosecuted in the name of the real party in interest.

(1) An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

We have held that "a real party in interest is the person who is the true owner of the right sought to be enforced. He is the person who is entitled to the fruits of the action." *Union Twp. School Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 188 (Ind.Ct. App.1998), *trans. denied.*

■ To determine who is the real party in interest, we must determine the true owner of the instant cause of action against the accountants. This can be done by examining the three primary indicia of ownership of personal property: title, possession, and control. *Womack v. State*, 738 N.E.2d 320 (Ind.Ct.App.2000), *trans. denied.* As we have mentioned, an heir has a vested interest in an estate upon the death of the intestate decedent. However, both the real and personal property is "subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with the expenses of administering the estate, the payment of other claims and the allowance is [sic] under Ind.Code 29–

1–4–1, except as otherwise provided in Ind. Code 29–1." I.C. § 29–1–7–23. As a result, the Inlows did not have the immediate title, right of possession, or control of the estate's personal property. Further, the Inlows only have a vested right of title to the real property, and that right remains subject to the administration of the estate by Kindig, the personal representative. Therefore, Kindig, as personal representative of the estate, is the real party in interest because, during the administration of the estate, he is the "true owner of the right sought to be enforced." *Union Twp. School Corp.*, 706 N.E.2d at 188. As such, because there is no set of facts upon which the Inlows could succeed at trial, the trial court did not err in granting the accountants' motion to dismiss the Inlows' amended complaint.

However, T.R. 17(A) also reads:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest.

Therefore, we affirm the trial court's granting of the accountants' motion to dismiss.

2. *Second Amended Complaint*

The Inlows argue that the trial court abused its discretion in denying their motion to file their second amended complaint. Specifically, the Inlows argue that the trial court should have allowed them to amend their complaint because a final judgment order had not been entered. Further, the Inlows argue that they had discovered new evidence and that both Kindig and Fifth Third Bank, the successor personal representative, had assigned to them any claims against the accountants.

■■■ Indiana Trial Rule 15(A) governs the amendment of pleadings after a responsive pleading has been served. A party wishing to amend his pleading must receive the permission of the trial court. T.R. 15(A). "Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury." *Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind.Ct.App.1991). A trial court has broad discretion to grant or deny amendments to pleadings, and this court will reverse only upon an abuse of that discretion. *Id.* A trial court abuses its discretion when it arrives at a conclusion that is "clearly against the logic and natural inferences to be drawn therefrom or a decision which contravenes reasonable probable and actual deductions." *Id.* at 575. When making its decision to grant or deny amendments to pleadings, a trial court may consider the following factors: (1) undue delay; (2) bad faith; (3) a dilatory motive on the part of the movant; (4) repeated failure to cure deficiency by amendment previously allowed; (5) undue prejudice to the opposing party by virtue of the amendment; and (6) futility of the amendment. *Id.*

In this case, the trial court issued an order on June 8, 2000 granting the accountants' motion to dismiss the Inlows' first amended complaint. The Inlows timely filed their notice of appeal of June 28, 2000. Because the trial court had not entered a final judgment concerning its order on the accountants' motion to dismiss, the Court of Appeals issued an order on April 20, 2001 dismissing the Inlows' appeal without prejudice. On April 24, 2001, the Inlows filed their motion seeking the trial court's permission to file a second amended complaint. On May 9, 2001, the accountants filed a motion requesting the

trial court to enter final judgment concerning its June 8, 2000 order granting their motion to dismiss. On May 10, 2001, the trial court denied the Inlows' motion to file a second amended complaint, dismissed the Inlows' action with prejudice, and entered final judgment.

■■■ Based upon the record, we find that the trial court did not abuse its discretion in denying the Inlows' motion. The record reveals that the trial court had already determined that the Inlows' amended complaint could not survive the accountant's motion to dismiss on June 8, 2000. Further, the Inlows' filing of their notice of appeal evidences their understanding of the trial court's intent to dismiss the action. While we recognize that the trial court's failure to enter a final judgment initially deprived the Court of Appeals of its jurisdiction to hear this case, it certainly did not mean that the Inlows were entitled to amend their pleadings. Ind. Appellate Rule 5(A). As we have already held that the Inlows are not the real party in interest to bring this claim against the accountants, an amendment to the pleadings would have been futile.

We remand this case to the trial court for the sole purpose of the trial court establishing a reasonable time for the estate's successor personal representative to decide whether to ratify, join, or be substituted in this action before dismissal.

Affirmed and remanded.

BAILEY, J. concurs.

SHARPNACK, J., dissents with separate opinion.

SHARPNACK, Judge, dissenting.

I respectfully dissent. I agree with the majority that pursuant to Trial Rule 17(A), Fifth Third Bank, as personal representative of the Estate, must be given a reasonable time to be substituted for the Inlows as plaintiff before the trial court can dismiss the action. However, I do not agree with some of the majority's reasoning, and I believe we must address the trial court's denial of the Inlows' second motion to amend the complaint to allow them to proceed as assignees of the claims of the personal representative against the defendants.

First, I think it is necessary to emphasize that "the Inlows" as referred to in the majority opinion and in this dissent are not *all* of the heirs of the intestate decedent. Rather, "the Inlows" are the four children of the decedent by his first marriage. His other heirs are his second wife and a child of his second marriage. Pursuant to Ind. Code § 29–1–2–1, the second wife is entitled to one-half of the Estate, while the five children are entitled to share equally the other half of the Estate. Consequently, the Inlows who brought this action collectively are entitled to four-tenths of the decedent's intestate Estate. By their action here, the Inlows seek to recover the entire amount by which the Estate allegedly has been reduced by the failings of the defendants. Any damage to an estate has its effect on all heirs according to their respective shares. Some of them should not be entitled to recover what is due to all of them.

Secondly, I cannot agree with the majority opinion's conclusion that:

> The Inlows' status as heirs is evidence of their personal stake in the lawsuit, and the potential devaluation of their shares as a result of the alleged conduct of the accountants places them in immediate danger of sustaining a direct injury. Therefore, we find that the Inlows have standing.

*Op.* at 1182. I do not see that the Inlows have standing. It is, of course, the case that by virtue of Ind.Code § 29–1–7–23 the real and personal property of the decedent passed to the heirs of the dece-

dent upon his death.[1] However, the property passed to the heirs "subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with the expenses of administering the estate, the payment of other claims and the [allowances] under IC 29–1–4–1, except as otherwise provided in IC 29–1." Ind.Code § 29–1–7–23. In other words, the heirs have no right to the enjoyment or use of any Estate property until the obligations of the Estate have been met and what property remains is distributed to the heirs. *See* Ind.Code § 29–1–14–9 (listing the order in which claims shall be paid if the assets of the estate are insufficient to pay all claims).

The Probate Code imposes upon the personal representative a requirement to take "possession of all the real and personal property other than allowances under IC 29–1–4–1." Ind.Code § 29–1–13–1. The personal representative has a duty to protect those assets for all interested parties, including the heirs, the creditors, and the government. *In re Robak*, 654 N.E.2d 731, 735 (Ind.1995); *Ind. Dep't of State Revenue, Inheritance Tax Div. v. Cohen's Estate*, 436 N.E.2d 832, 836 (Ind.Ct.App. 1982). Accordingly, the Probate Code gives the personal representative numerous powers over an estate's assets. For example, the Probate Code gives the personal representative "full power" to bring a lawsuit as personal representative of an estate, "for any demand of whatever nature due the decedent or his estate or for the recovery or possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative." Ind.Code

§ 29–1–13–3. The personal representative may continue a business and invest the funds of an estate. Ind.Code §§ 29–1–13–11, 29–1–13–14. The personal representative shall pay taxes, collect rents and earnings, and keep buildings and fixtures in "tenantable repair." I.C. § 29–1–13–1. The personal representative may protect buildings by insurance and may maintain a cause of action for possession of or to determine title to real property. *Id.* The personal representative may deposit an estate's money in a bank account and, under some circumstances, may perform contracts entered into by the decedent. Ind. Code §§ 29–1–13–13, 29–1–13–14. It is clear under the Probate Code that the personal representative is in complete charge of an estate's property until such time as the estate is wound up.

If the personal representative does not meet his obligations, the personal representative can be removed by the court, either on its own motion or upon petition by an interested party. Ind.Code § 29–1–10–6. The personal representative is also subject to suit, along with his bond surety, for damages that may result from his failure to discharge his duties as personal representative. Ind.Code §§ 29–1–11–10, 29–1–14–11, 29–1–16–1. If interested persons are concerned about the management of an estate, they may petition the court to require the personal representative to file a verified accounting of his administration. Ind.Code § 29–1–16–3. In addition, if interested parties believe that the personal representative is not diligently pursuing a claim that belongs to the estate, those interested parties may petition the court to hold a hearing to determine whether the claim should be pursued and whether a

---

1. Notwithstanding the comment of the Probate Code Study Commission following Ind. Code § 29–1–13–1, I think it is clear that Ind.Code § 29–1–7–23 makes no distinction between the real property and the personal property of the decedent. All property passes upon death. *See* I.C. § 29–1–7–23 ("When a person dies, his real and personal property passes ... to the persons who succeed to his estate as his heirs....").

special administrator should be appointed to pursue the claim on behalf of the estate. Ind.Code § 29–1–13–16.

It is inconsistent with the regime established under the Probate Code to give standing to heirs, and most particularly only some heirs, to bring claims for damages to the property of the Estate when there is a personal representative charged with the obligation to bring such claims and subject to removal or liability for not meeting that obligation. See I.C. §§ 29–1–13–3, 29–1–10–6, 29–1–16–1, 29–1–11–10. Consequently, I conclude that the Inlows have no standing to sue the Accountants for any shortcomings in their work for the personal representative of the Estate. See, e.g., McGahan v. Nat'l Bank of Logansport, 151 Ind.App. 658, 670, 281 N.E.2d 522, 530 (1972) (holding that an heir could not sue in her individual capacity to recover assets of a decedent from a third party; rather, the heir had to petition the court to reopen the estate and to appoint the heir administratrix de bonis non to recover the assets still unadministered). Having no standing, the Inlows also are not the real parties in interest under Ind. Trial Rule 17 to bring this lawsuit against the Accountants.

Nevertheless, the standing issue cannot be fully resolved unless we deal with whether the trial court erred by denying the Inlows' motion to allow the second amended complaint. In the second amended complaint, the Inlows asserted that the assignment of rights by the personal representatives, Kindig and Fifth Third Bank, gives them standing to sue the Accountants. If the assignment from the personal representatives is valid, the Inlows have standing on remand of this cause to pursue this claim as assignees of the estate's claim against the Accountants, and the current personal representative would no longer be the real party in interest, having assigned its "interest" to the

Inlows. If on the other hand, the assignment of rights is invalid, the Inlows remain without standing to pursue the claim against the Accountants, and the current personal representative remains the real party in interest who could proceed upon remand of this cause. The parties and the trial court must know where things stand. Addressing whether the trial court abused its discretion by denying the second amendment to the pleadings allows us to tell the parties and the trial court where things stand.

Ind. Trial Rule 15(A) controls second amendments to pleadings and provides, in pertinent part, that "a party may amend his pleading [a second time] only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." This court has previously set out the law that controls appellate review of the trial court's denial of a motion to amend pleadings:

Trial courts should liberally permit amendments, while considering any prejudice to the non-moving party. A trial court has broad discretion in deciding whether to permit or deny amendments to pleadings, because of its strategic advantage in balancing various trial considerations. On review, we generally affirm the trial court's decision regarding a discretionary motion if there is any rational basis for the decision.

An abuse of discretion occurs when there is a conclusion or judgment that is clearly against logic and the natural inferences to be drawn therefrom, or a decision that contravenes reasonable, probable and actual deductions. It is not an abuse of discretion to deny a motion to amend a pleading where such an amendment would be futile.

Strodtman v. Integrity Builders, Inc., 668 N.E.2d 279, 284 (Ind.Ct.App.1996) (cita-

tions omitted), *reh'g granted on other grounds*, 668 N.E.2d 285, *trans. denied.*

Here, the trial court did not abuse its discretion when it denied the Inlows' motion to amend their complaint because the amendment would have been futile. *See, e.g., id.* With the proposed amendment, the Inlows sought to assert that they had standing to bring the lawsuit against the Accountants pursuant to the assignment from Kindig and Fifth Third Bank that allegedly assigned the personal representative's right to sue the Accountants to the Inlows. However, that assignment of rights was not valid.

The personal representative of an estate is a fiduciary. Ind.Code § 29–1–1–3. His fiduciary responsibility "extends to all legatees." *Fall v. Miller*, 462 N.E.2d 1059, 1063 (Ind.Ct.App.1984). As this court stated in *Fall:*

> There is a thread which runs through the law governing fiduciary relationships which forbids a person standing in a fiduciary capacity to another from profiting by dealing in the property of his beneficiary, and any such profit realized must be disgorged in favor of that beneficiary.

*Id.* at 1061. Accordingly, a personal representative cannot profit from the use of estate funds. *Id.* at 1063. A personal representative cannot purchase the legacy of any legatee for his benefit or for the benefit of the other legatees. *Id.* In addition, the personal representative cannot transfer assets from himself as personal representative of the estate to himself as an individual. *Williamson v. Williamson*, 714 N.E.2d 1270, 1274 (Ind.Ct.App.1999), *reh'g denied, trans. denied.*

In the context of whether a personal representative could sell real property to himself from an estate, this court discussed that the policy behind prohibiting a personal representative from dealing assets to himself for his own personal benefit is "to eliminate any hint of impropriety or fraud." *Id.* We are not necessarily concerned with whether fraud or injury to the estate actually occurred in a specific case. *Id.* Rather, the rule is set up to prevent the possibility of fraud. *Id.* In addition, by prohibiting a fiduciary from retaining "gain or profit from wrongful, speculative, or self-dealing transactions in his beneficiary's property[,]" while also holding the fiduciary liable for losses to the estate, we hope to effectively deter fiduciaries from engaging in inappropriate transactions with estate assets. *Fall*, 462 N.E.2d at 1063.

Here, any loss or damage to the Estate caused by any acts or omissions of the Accountants was loss or damage to the Estate as a whole, affecting all heirs. Any claim for that loss or damage belonged to the Estate and could be brought by the personal representative. Kindig promised to assign the Estate's right to sue the Accountants to the Inlows upon the Inlows promise not to sue Kindig personally for his failings as personal representative. In essence, Kindig traded an asset belonging to the Estate for his own personal benefit. As discussed above, fiduciaries, including personal representatives, are prohibited from engaging in transactions involving estate property for their own benefit. *See also Thomasson v. Brown*, 43 Ind. 203, 206 (1873) (holding that when an administrator traded notes belonging to the estate for assets that he was going to keep for himself, the administrator committed a breach of his duty as administrator and wasted and squandered the assets of the estate). Consequently, the agreement between Kindig and the Inlows is void, and the assignment of rights must be set aside. *See id.* (holding that a third party could not profit by keeping assets of an estate from their rightful owner when that third party knew when he acquired the assets that the administrator was trading the es-

tate's assets for the administrator's own benefit); *see, e.g., Williamson,* 714 N.E.2d at 1274 (holding that personal representative's sale of estate's real property to himself as an individual was void and the deed must be set aside).

Because the agreement between Kindig and the Inlows by which Kindig traded the estate's assets for his own benefit is void, that agreement could not give rise to a valid assignment of rights by which the Inlows would have standing to sue the Accountants. Consequently, as the second amendment was futile, the trial court did not abuse its discretion when it denied the Inlows' second motion to amend their complaint. *See Strodtman,* 668 N.E.2d at 284.

I recognize that a personal representative could, with court approval, distribute to an heir by assignment an asset of the estate as a partial distribution to be credited against the heir's share of the total net estate. *See* Ind.Code § 29-1-17-1. There is nothing in the transaction that led to the assignment and release to suggest it was an approved distribution. In fact, the probate court expressly avoided approving of the assignment.

I would remand this cause either for the personal representative, Fifth Third Bank, to be substituted for the Inlows as plaintiff or for the action to be dismissed.